STATE *vs.* MARTIN J. CASEY.

MARCH 22, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. In this case the defendant was charged with maliciously and wantonly injuring and defacing a building not his own and breaking the glass therein contrary to the statute, namely, general laws 1938, chapter 608, §23. On appeal from a district court a jury in the superior court found him guilty as charged. The trial justice denied his motion for a new trial and he has duly prosecuted his bill of exceptions to this court.

It appears from the evidence that the defendant in 1940 rented from Fairlawn Enterprise, Inc., at $42 per month, a front store in a building owned by that corporation and located at 561 Smithfield avenue in the city of Pawtucket. This building was of cement block construction, and the interior of the store was finished with metal tile. After renting such store the defendant at his own expense had a partition with an archway constructed across the rear thereof, making a small back room or storage space. He also had plywood veneer paneling put up on the side walls. This paneling apparently was fastened at the top and bottom to studding which was placed against the metal tiling, the studding being braced or clamped to the floor to hold it steady. Later he had some additional electric wiring installed. In this store there were booths, shelving and a soda fountain, and defendant conducted therein a business described in the testimony as a spa.

In May 1941 the lessor made an alteration in the partition in the rear of the store in connection with the breaking through of a door in the main wall separating the front store from a large room or hall in the rear thereof, and also made a relocation of the cellar stairway. The lessor paid the greater part of the bill for this work, the defendant making only a small contribution. Thereafter the defendant for several months occupied not only the store but also the rear room, paying rent at the rate of $65 per month. In the latter part of 1941 the defendant closed the front store and from then on conducted a social and athletic club for young men in the large rear room, apparently, however, keeping access to the store through the rear door. His contention is that at all times he remained a tenant of the front store.

The state maintains, on the other hand, that the evidence shows that soon after the front store was closed the defendant surrendered possession thereof and was tenant only of the large rear room. In the winter of 1941 the defendant's rent was raised to $75 per month. In October 1942 a number of boxes of shoes were deposited in the front store, with the

lessor's consent, by one Kugler, who testified that he rented it November 1, 1942. About November 15, 1942 a question arose between an officer of the lessor and the defendant regarding the latter's continued occupancy of the premises, he having paid rent up to that date. The evidence is conflicting as to what was said and done at that time.

During this period the defendant was employed in a liquor store in Pawtucket, which did not close until 11 or 11:15 p. m. On December 6, 1942, a Sunday, the defendant moved his tables, chairs and other personal property from the rear room, and also took down some electric wiring which had been installed therein, as previously stated. Later, after work on the night of December 9, the defendant got something to eat in a diner and then went to the premises in question arriving there about midnight. He entered by the rear door and then pushed open the door in the partition between the rear room and the front store. The electric service, which was in his name, had been disconnected and he worked by the aid of a street light which shone in the front windows of the store.

Without having consulted counsel he then took down part of the paneling on the side walls, unscrewing the screws which held the studding braced or clamped to the floor. About 2 a. m. on December 10 a patrolman in making his rounds heard a rather loud noise, as of banging, in the store and tried the door. He was admitted by the defendant who stated that he was taking some things which belonged to him. The police officer merely told the defendant that he had better do no more work until daylight as people living in the apartments above the store might be disturbed. The defendant agreed to this suggestion and the police officer then left.

In his testimony the defendant admitted that in moving part of the paneling he accidentally broke a pane of glass in one of the rear windows. As to broken glass in the rear doorway of the building he testified that boys had done that some considerable time before this occurrence. Thereafter,

on the night of December 10, the defendant was interviewed at his home by a police inspector regarding his conduct in removing the paneling and was asked to go to police headquarters the next day. The defendant did so and was then arrested under the present warrant.

The state argues that the defendant had no right to be in the front store on the night in question as he was not a tenant thereof; that he had no justification for his acts therein; and that the evidence fully supports the jury's verdict. The defendant contends that he acted reasonably, in good faith, and without malice, believing that he had the right to remove the fixtures which he had installed at his own expense; and that he was at the time a tenant of the front store as well as of the large rear room, having paid his rent up to December 15, 1942. It is clear, therefore, that the controlling issue in this case is whether or not the defendant acted maliciously and wantonly, this being the essential element of the offense charged. See *State* v. *Gilligan*, 23 R. I. 400. Other issues, such as occupancy of the store, the existence of a tenancy thereof, the matter of the payment of rent, and the nature of the fixtures, are material and relevant only as they assist in determining the controlling issue.

The defendant has briefed and argued several exceptions but we shall consider only his exception to the denial by the trial justice of the motion for a new trial, which was based on the usual grounds. A careful consideration of the statement made by the trial justice, when he so ruled, in our opinion prevents us from giving his decision the usual persuasive force which we ordinarily give to such a finding. In the first place, the trial justice, in giving a reason why he believed that the defendant had acted maliciously and wantonly, stated that: "When the jury took the view, there was an altercation between Casey and the landlord."

Under our well-settled practice a view and matters which occur thereon are not evidence. It was therefore error for the trial justice to consider such an incident as evidence and to rely on his own impression thereof in determining whether

the jury's verdict, in regard to the essential elements of defendant's alleged malice and wantonness, was supported by the proper weight of the evidence.

In the second place, the trial justice, in considering the evidence, mistakenly applied thereto the wrong rule of law in relation to the required burden of proof, to the prejudice of the defendant. In this connection he made the following statement: "The court, exercising its independent judgment, and reviewing the testimony, finds the verdict is supported by the credibility of the witnesses and the great weight of the testimony . . . ." We understand from this language, when considered with other portions of his decision, that the trial justice found that the verdict was supported by a preponderance of the credible evidence. In so acting he applied the rule of law governing civil cases; but that rule is not applicable in criminal cases wherein the state is required to prove the defendant guilty beyond a reasonable doubt. It is true that the trial justice did state that in his judgment the jury could not have found any other verdict than they did. But that would not help the state here if such conclusion was based upon the application of the wrong rule of law regarding the required burden of proof. We therefore should disregard such decision in determining whether or not the defendant is entitled to a new trial.

Without having had the benefit of seeing and hearing the witnesses testify, we have examined the evidence in order to reach a decision on the above question. Considering the nature of the charge, the issue involved, and the circumstances disclosed by the evidence, we have come to the conclusion that the issues that would be controlling if the case were a civil action for damages between a lessor and a lessee were greatly overemphasized and that the essential issue of proving defendant's malice and wantonness beyond a reasonable doubt was lost sight of. In our opinion the jury may well have been misled and confused by such overemphasis. Indeed, the trial justice himself apparently carried some such confusion into his decision of the defendant's motion

for a new trial when, as we have pointed out, he applied, in weighing the evidence, the rule respecting the burden of proof which is applicable in civil cases only, rather than requiring proof beyond a reasonable doubt of the existence of malice and wantonness.

After a careful consideration of the record before us, we are of the opinion that justice requires that the case be submitted to another jury.

The defendant's exception to the refusal of the trial justice to grant his motion for a new trial is sustained, his other exceptions are not passed upon, and the case is remitted to the superior court for a new trial.

*John H. Nolan*, Attorney General, *Raymond F. Henderson*, Asst. Attorney General, for State.

*Francis R. Foley*, for defendant.