USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1523 WILLIAM R. LEHMAN, Plaintiff, Appellant, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Bailey Aldrich,1 Senior Circuit Judge] ____________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Scott A. Lathrop for appellant. ________________ Alice E. Richmond with whom John Foskett and Deutsch _________________ ____________ _______ Williams Brooks DeRensis Holland & Drachman were on brief for ___________________________________________ appellee. ____________________ January 22, 1996 ____________________  ____________________ 1Of the United States Court of Appeals for the First Circuit, sitting by designation. CAMPBELL, Senior Circuit Judge. William R. Lehman, ____________________ a former employee of the Prudential Insurance Company of America ("Prudential"), sued in the district court for age discrimination in violation of the Massachusetts Fair Employment Practices Act, Mass. Gen. L. ch. 151B, 4, and for pension discrimination in violation of section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. 1140. The district court granted Prudential's motion for summary judgment on both counts and denied plaintiff's motion for reconsideration. Lehman appealed. We affirm. I. We summarize the facts in the light most favorable to Lehman, the party opposing summary judgment. Barbour v. _______ Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995). _______________________ Prudential hired Lehman in late 1974 to work as a brokerage manager for the Greater New York Brokerage Agency.  In 1978, Lehman was relocated and promoted to agency manager of the brokerage agency in Boston, Massachusetts. In 1986, Prudential expanded the territory of the agency run by Lehman, making him director of its New England Brokerage Agency which included all of New England except Fairfield County in Connecticut. Even after the expansion, the New England agency was relatively small; nevertheless, it -2- 2 performed very well under Lehman's direction. In 1988, Prudential created Pru Select, a separate sales division of Prudential's life insurance business, to supervise the twelve regional brokerage agencies. Ira Kleinman was appointed President of Pru Select, and he hired Roger Dunker as Pru Select's Senior Vice President. Dunker, along with Lehman's prior supervisors, gave Lehman glowing performance reviews. Effective January 1, 1990, Pru Select revised its pension plan by changing the commencement year for calculating average eligible earnings from 1979 to 1983, benefitting more senior employees, and by providing a 50% annuity to widows without charge to the employee, benefitting Lehman whose wife is fifteen years younger than he. Lehman projected the additional cost to Prudential of his pension, in light of the above modifications, to be $500,000. Also at that time, Pru Select overhauled and streamlined its brokerage agencies. It consolidated its twelve regions and directors into five regions and seven directors. In December of 1990, Dunker told Lehman that as of April 1, 1991, his New England office was going to be consolidated with the entire New York territory and part of the New Jersey territory. Lehman was to assume the duties and compensation scheme of a brokerage manager and report to the co-managing directors in the newly created Northeast region: Robert Kiley, the pre-consolidation director of the -3- 3 New York office, and the newly hired David Dietz. According to Lehman, his income potential as brokerage manager could be less than 25% of what it had been as a director. Lehman was instructed to formulate his own unit of brokers in New England from whom he could solicit business. However, he did not feel that this was possible, and after several meetings in which he attempted to define his new unit, he wrote to Dunker stating that the reassignment of his responsibilities constituted involuntary termination motivated by age discrimination. Lehman then accepted an early retirement package. Before the merger, Lehman, aged 61, directed the New England office, and Kiley, aged 57, directed the New York office. After consolidation of the two offices into the new Northeast region, the latter was headed jointly by Kiley and the 42-year-old Dietz. According to Lehman, the post- consolidation directors had the same responsibilities as the pre-consolidation directors, but instead of being geographically separated, their responsibilities were now more specialized. The overall results of the various  regional consolidations were that four of the twelve pre- consolidation directors, aged 63, 57, 57, and 42, were appointed to director positions. One of the pre- consolidation directors, aged 62, retired. The remaining seven pre-consolidation directors, aged 61 (Lehman), 47, 45, -4- 4 45, 45, 41, and 37, were demoted to brokerage managers. The three newly appointed directors were aged 42, 42, and 40.  II. II. This court reviews the district court's grant of summary judgment de novo. Goldman v. First Nat'l Bank of _______ ___________________ Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). Summary ______ judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact, the moving party being entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); United States v. _____________ Diebold, Inc., 369 U.S. 654, 655 (1962); Lareau v. Page, 39 _____________ ______ ____ F.3d 384, 387 (1st Cir. 1994). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds ____________ _____________ Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). ___________ Age Discrimination Claim  Age Discrimination Claim Lehman alleges that his employer, Prudential, unlawfully discriminated against him on the basis of his age, in violation of Mass. Gen. L. ch. 151B, 4.1 Under  ____________________ 1. The Massachusetts age discrimination statute states in relevant part:  -5- 5 Massachusetts law, discrimination claims are analyzed and reviewed under a three stage order of proof. See Wheelock ___ ________ College v. Massachusetts Comm'n Against Discrimination, 371 _______ ___________________________________________ Mass. 130, 355 N.E.2d 309, 313-14 (1976) (citing McDonnell _________ Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The first _____________ _____ stage consists of ascertaining whether the plaintiff has made out a prima facie case of discrimination. If so, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its employment decision. In the third stage, the plaintiff must establish either that the employer's reason was a pretext or that the actual reason for the adverse employment decision was discrimination.2 Blare _____  ____________________ It shall be an unlawful practice: . . . 1B. For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.  Mass. Gen. L. ch. 151B, 4. 2. In this third stage, the burden on the plaintiff is less under Massachusetts law than it is under federal law. To survive summary judgment under federal law, the plaintiff is required to show that the employer's reason was pretextual and that the actual reason for the adverse employment decision was discrimination. Under Massachusetts law, showing that an employer's proffered reason for an adverse employment action is merely pretextual is sufficient by itself to survive summary judgment. See Blare, 646 N.E.2d at ___ _____ 116-17. -6- 6 v. Husky Injection Molding Sys. Boston, 419 Mass. 437, 646 ___________________________________ N.E.2d 111, 115-17 (1995).  To make out a prima facie case, Lehman had to show by a preponderance of the evidence that (1) he was a member of the protected class;3 (2) he was qualified for the position in question; (3) he was denied the position; and (4) his employer sought to fill the position by hiring a younger individual with qualifications similar to those of the plaintiff.4 See McDonnell Douglas, 411 U.S. at 802; Beal, ___ _________________ ____ 646 N.E.2d at 136; Blare, 646 N.E.2d at 115. "[T]he burden _____ of establishing a prima facie case of disparate treatment is not onerous." Texas Dep't of Community Affairs v. Burdine, ________________________________ _______  ____________________ 3. The protected class includes all individuals over forty years of age. Mass. Gen. L. ch. 151B, 1(8). 4. "[T]he facts necessary to establish a prima facie case of discrimination will vary depending on the circumstances of each case." Beal v. Board of Selectmen of Hingham, 419 Mass. ____ _____________________________ 535, 646 N.E.2d 131, 136 (1995). See also McDonnell Douglas, ________ _________________ 411 U.S. at 802 n. 13; Wheelock College, 355 N.E.2d at 313 ________________ n.5. Lehman argues that this is a termination case rather than a promotion case, and, therefore, he should only be required to show that he was performing his job in a satisfactory manner and then was replaced by a younger person with similar qualifications. However, the facts of this case are more akin to a promotion case than to a termination case.  Lehman contends that Prudential should have hired him for the newly created co-managing director position of the Northeast region. The elimination of Lehman's position as director of the New England region in the consolidation did not entitle him to the newly created co-managing director position. As the district court found, the two positions were not identical. The Northeast territory, including New York, New Jersey, and most of New England, was much larger than Lehman's New England territory. Moreover, the duties of the co-managing directors were more specialized than the duties of the pre-consolidation directors had been.  -7- 7 450 U.S. 248, 253 (1981). See also Villanueva v. Wellesley ________ __________ _________ College, 930 F.2d 124, 127 (1st Cir.), cert. denied, 502 U.S. _______ ____________ 861 (1991). The district court found that Lehman failed to present evidence showing that he was qualified for the co-managing director position and that the individual who was hired had qualifications similar to his. The court held, therefore, that Lehman had not presented a prima facie case against Prudential. Since we find plaintiff did not meet his burden, in the context of summary judgment, of establishing pretext, we need not tarry over the prima facie case issue.  See Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. ___ ____ _____________________ 1993) (a court of appeals may affirm "on any independently sufficient ground made manifest by the record"). Even assuming a prima facie case was made, the burden shifted to Prudential to provide a legitimate business reason for its hiring decision.5 As the district court found, Prudential's stated business reason for not hiring Lehman as co-managing director was legitimate and non- discriminatory; it was also sufficiently supported in the record to satisfy the requirements of Massachusetts law. See ___ Woods v. Friction Materials, Inc., 30 F.3d 255, 263 (1st Cir. _____ ________________________ 1994).   ____________________ 5. This burden is one of production, not persuasion. The burden of proving discrimination remains with the plaintiff at all times. See Burdine, 450 U.S. at 253. ___ _______ -8- 8 Prudential's asserted reason for hiring Dietz was that Dietz's qualifications were more in line with its needs than those of Lehman. See id. at 261. Kleinman and Dunker ___ ___ believed that Dietz would best add the qualities required for the Northeast co-managing director position alongside of Kiley. In support of Prudential's asserted reason was a considerable body of evidence indicating that Dietz could reasonably be regarded as better suited to that position than Lehman: (1) Dietz had greater experience in the supervision of national marketing efforts; (2) Dietz had greater experience in managing large insurance organizations; (3) Dietz had greater recognition as a leader in the life insurance industry; and (4) Dietz got along better with the other co-managing director, Kiley. Prudential, therefore, met its second stage burden. In the third stage, the burden returned to Lehman to produce evidence sufficient to support a jury verdict that it was more likely than not that (1) Prudential did not offer Lehman the position he desired because of his age; or (2) __ Prudential's reason for not offering Lehman that position was a "pretext." See Blare, 646 N.E.2d at 118. "'[E]vidence ___ _____ which may be relevant to the plaintiff's showing of pretext may include application of a certain criterion to employees [not within the protected category]; the employer's general practice and policies concerning employment of [those within -9- 9 the protected category]; and the employer's treatment of the plaintiff during [his] employment.'" Id. (quoting Lewis v. ___ _____ Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, __________________________________________ 493 N.E.2d 867, 872 (1986) (alterations in original)).  Attempting to show that Prudential's reason was pretextual, Lehman pointed out that Dietz, the individual offered the co-managing director position in the Northeast region, was younger than he, and that the previous New England agency had performed consistently well under Lehman's leadership.6 However, the fact that Lehman had been successfully directing the New England agency was insufficient, by itself, to show that Prudential's reason for hiring Dietz was pretextual. As already described, Dietz had important qualifications of his own that could reasonably lead to the belief that he was superior to Lehman for this job. The position of co-managing director of the large, reorganized Northeast region involved different responsibilities and could reasonably be thought to require a different blend of talents than those required for solo management of the smaller New England office.   ____________________ 6. To demonstrate that the New England agency was successful under his leadership, Lehman reports that (1) since 1986 the New England agency was consistently in the top 40% of all agencies; (2) the agency had very good policy persistency and very low expenses; (3) he had hired and trained six brokerage managers in New England; and (4) he had solicited work from brokerage general agencies. -10- 10 It is undisputed that several of the pre- consolidation directors were promoted and several were not, and their relative ages and performance records do not suggest that those decisions were aged-based. The average age of pre-consolidation directors appointed to be post- consolidation directors was older than the average age of those pre-consolidation directors, including Lehman, who were not appointed.7 Lehman was treated the same as the other six directors, all under 50, who were not promoted. We refuse to second guess Prudential's hiring decision for a management position of this nature absent clearer evidence of irrationality. See Villanueva, 930 F.2d at 129; Odom v. ___ __________ ____ Frank, 3 F.3d 839, 847 (5th Cir. 1993) ("[U]nless disparities _____ in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question").  ____________________ 7. The average age of the four pre-consolidation directors appointed to post-consolidation director positions was 55 years, while the average age of the seven pre-consolidation directors (including Lehman) not appointed to director positions was 46 years.  Including the three newly hired directors in the analysis does not change the result. The average age of the seven post-consolidation directors was 49 years, while the average age of the seven pre-consolidation directors not promoted was 46 years. -11- 11 In addition to attempting to show Prudential's reason pretextual, Lehman provided what he considers indirect evidence of age discrimination. Lehman pointed to a statement made during the May 1990 Directors' Meeting, while Kleinman was explaining changes in the expense formula used to calculate agency profitability. Kleinman stated that the previous expense component representing benefits was 31% of all compensation paid to employees and added that using 31% "was a gift" because of "the age of some of the Directors."  Contrary to Lehman's allegations, this statement does not show animus based on age, but rather merely states that the formula that had been employed was favorable to older directors and points out that the use of actual costs under the modified method might result in higher assessments. This statement -- which did not mention Lehman, and in no way indicated that older directors were lacking in competence -- provides insufficient basis for an inference that Prudential did not offer Lehman the position he wanted because of his age.8 Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent. See Gagne v. ___ _____ Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir. ___________________________  ____________________ 8. Unlike remarks made in Blare by a supervisor, Kleinman's _____ comment could not reasonably be construed to reveal a belief that Lehman lacked the ability to perform well because of his age. See Blare, 646 N.E.2d at 118.  ___ _____ -12- 12 1989); cf. Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1271 ___ __________ ______________ (8th Cir.), cert. denied, 484 U.S. 855 (1987).  ____________ Lehman also pointed to a photostat entitled "Organizational Man, New Manager." The photostat came from a presentation to Prudential's Individual Insurance Business Unit by a business consultant, Dr. Paul Lienberger. Dr. Lienberger discussed the need to adapt products and marketing to demographic changes in the marketplace. One of several slides shown by Dr. Lienberger depicted the "Organizational Man" of the "Ozzie and Harriet" generation as being pessimistic, being cautious, being oriented to bureaucracies, and having a 30-year career plan; in contrast, the "New Manager" of the "Kuzak & Gracie of L.A. Law" generation was depicted as risk taking, optimistic, well educated and hardworking. Dunker, who had attended Dr. Lienberger's presentation, decided to include a videotape of the presentation and photostats of the slides as part of a discussion in the November 1990 Directors' Meeting. Due to time constraints, the videotape was not shown; nonetheless, the directors, including Lehman, received a copy of the photostats. Lehman argued that the comparisons made on the "Organizational Man" photostat indicated an age-stereotyped mentality. However, we think it too long a stretch to interpret a photostat generated by a marketing consultant in an entirely different context as indicating that Prudential -13- 13 was biased when placing its older brokerage employees. There is no evidence in the record before us that the photostat and its context had any relation to the decision of whom to hire as co-managing brokerage directors. We conclude that Lehman's evidence, taken at its best, was insufficient to show that, in not appointing Lehman to the co-managing director position, Prudential was motivated by age discrimination or that its asserted reason for not appointing him was pretextual. Pension Discrimination Claim (ERISA) Pension Discrimination Claim (ERISA) Lehman's second claim against Prudential was for unlawful pension discrimination in violation of section 510 of ERISA. 29 U.S.C. 1140.9 Lehman alleged that Prudential hired a younger person for the co-managing director position to avoid the high cost of funding his pension. This circuit, along with most others, analyzes  ____________________ 9. Section 510 of ERISA provides that it is unlawful for: any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C. 1140. -14- 14 ERISA discrimination claims under the same three stage burden-shifting paradigm described above. Barbour v. _______ Dynamics Research Corp., 63 F.3d 32, 37-38 (1st Cir. 1995) _______________________ (collecting cases). In the first stage, Lehman must set forth a prima facie case by demonstrating that: (1) he had the opportunity to attain rights under an ERISA benefit plan; (2) he was qualified for the position at issue; and (3) he was subjected to adverse action under circumstances that give rise to an inference of discrimination. Id. at 38. We again ___ assume arguendo, without deciding, that Lehman set forth a ________ prima facie case.  To dispel the inference of discrimination arising from a prima facie case, Prudential must only articulate, it need not prove, a non-discriminatory reason for its hiring decision. Dister v. Continental Group, Inc., 859 F.2d 1108, ______ _______________________ 1115 (2nd Cir. 1988). Lehman conceded that Prudential "articulated a legitimate, non-discriminatory reason for its action . . . [namely] that it selected Dietz instead of Lehman for the position of co-Managing Director because of Dietz' supposedly superior qualifications for the position."  At the third stage, Lehman must show that Prudential was motivated by "the specific intent of interfering with the employee's ERISA benefits." Barbour, 63 _______ F.3d at 37. See also McGann v. H & H Music Co., 946 F.2d ________ ______ _______________ 401, 404 (5th Cir. 1991); Dister, 859 F.2d at 1111; Gavalik ______ _______ -15- 15 v. Continental Can Co., 812 F.2d 834, 851 (3rd Cir.), cert. ___________________ _____ denied, 484 U.S. 979 (1987). ERISA provides no relief if the ______ loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action. Were this not so, every discharged employee who had been a member of a benefit plan would have a potential cause of action against his or her former employer under ERISA. Barbour, 63 F.3d at 37;  _______ see also Dister, 859 F.2d at 1111. To demonstrate that ________ ______ Prudential acted with the specific intention of interfering with Lehman's ERISA benefits, Lehman must show "(1) that [Prudential's] articulated reason for its employment actions was a pretext; and (2) that the true reason was to interfere ___ with [Lehman's] receipt of benefits." Barbour, 63 F.3d at 39 _______ (emphasis added). On this record, we find no genuine issue of fact either that Prudential was motivated by a discriminatory purpose or that Prudential's reason for not hiring Lehman co-managing director was not credible.  Effective January 1, 1990, Prudential made adjustments to its company-wide pension plan which Lehman estimates increased Prudential's cost of funding his pension by about $500,000 over time. Lehman contends that Prudential was aware of the high cost of his benefits10 and refused to offer him the co-managing director position in an effort to  ____________________ 10. Lehman points out that Prudential discovered an "expense gap" when it was first required to calculate age-related costs for certain pension plans.  -16- 16 reduce this cost (pension benefit obligations being lesser for younger people). Lehman again points to Kleinman's statement that benefits actually cost more than they had been estimating because of "the age of some of the Directors."  Viewing the evidence in the light most favorable to Lehman, we find nothing that would cause a reasonable fact- finder to doubt Prudential's explanation for its hiring decision. Prudential's mere awareness of the high cost of pension obligations combined with the single isolated ambiguous remark by Kleinman were insufficient, by themselves, to establish Prudential's discriminatory intent.  Lehman did not contradict deposition testimony that Prudential's benefit costs were calculated on a company-wide basis, and that Pru Select's top management, who made the hiring decision, received no individual employee calculation of pension costs. Nor did Lehman contradict deposition testimony that Prudential did not have knowledge of his wife's age, knowledge that would be necessary to compute his pension obligation. No material connection appears between the cost of funding Lehman's pension and Prudential's decision to hire Dietz rather than Lehman. We are satisfied that the record would not support a finding that Prudential did not hire Lehman as co-managing director because of the cost of funding his pension.  -17- 17 Affirmed. Costs to Appellee. Affirmed. Costs to Appellee. ________ -18- 18