In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2219

NATHAN MILLER, et al.,

Plaintiffs-Appellants,

v.

CITY OF INDIANAPOLIS and INDIANAPOLIS FIRE
DEPARTMENT,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP99-1735-C-M/S--Larry J. McKinney, Chief Judge.

Argued December 3, 2001--Decided February 20, 2002

Before POSNER, EVANS, and WILLIAMS, Circuit
Judges.

EVANS, Circuit Judge.  A group of
firefighters contend that the City of
Indianapolis violated the Uniform
Services Employment and Reemployment
Rights Act, 38 U.S.C. sec. 4301 (USERRA),
in the manner in which it calculated the
paid leave to which they are entitled
when they perform their yearly service in
the military Reserves or National Guard.
The district court concluded that the
firefighters failed to establish a
violation of USERRA even though they
might have a viable complaint that the
fire department policy violates Indiana
law.

Each of the plaintiffs is a
"suppression" firefighter with the
Indianapolis Fire Department. Suppression
firefighters work a 24-hour shift
followed by 48 hours off, with an
additional day off every 3 weeks. The
department also has "nonsuppression"
firefighters who work 8-hour shifts 5
days a week. Both groups include
firefighters who pull duty in the
Reserves or the National Guard. The
obligation of military reservists and the
National Guard members consists generally
of one 2-week period during the year and
one weekend day per month. Obviously,

during these times, the firefighters are unable to report for work at the fire department.

Section 10-2-4-3 of the Indiana Statutes provides that officers and employees of the state be granted leaves of absence "without loss of time or pay" for training or active duty in the military for up to 15 days per year:

(c) A member is entitled to receive from the member's employer a leave of absence from the member's respective duties, in addition to regular vacation period, without loss of time or pay for such time as the member is:

(1) on training duties of the state of Indiana under the order of the governor as commander in chief; or

(2) a member of any reserve component under the order of the reserve component authority;

for consecutive or nonconsecutive periods not to exceed a total of fifteen (15) days in any calendar year.

In addition, section 291-210 of the Municipal Code of the City of Indianapolis requires that military leave "shall be granted in accordance with appropriate state and federal law" and that in "accordance with state law, a maximum of fifteen (15) eight-hour working days of paid military leave shall be granted." If an employee exceeds the 15 days, he is entitled to leave "with or without loss of time or pay . . . ."

The Indianapolis Fire Department General Order No. 2.03 states that all members of the armed forces are entitled to leaves of absence with pay for "periods not to exceed 120 duty hours in one calendar year." Leaves of absence beyond that number of hours "shall be without pay." The requirement for 120 hours of paid leave comes from converting 15 8-hour days into hours./1 If the firefighters exhaust their 120 hours, they are allowed to use things like annual vacation days, unpaid leave, or, under some conditions, they can trade duty time with other personnel. The policy of the department is to charge excess military leave against vacation leave, but, upon request, it will charge the excess

military leave as unpaid leave time.

   In implementing General Order No. 2.03, the department docks the suppression firefighters for 24 hours of military leave for each day of military service, which falls on a regularly scheduled tour of duty (during which they would have worked 24 hours). It docks nonsuppression firefighters 8 hours per day, also the number of hours they would have worked. The problem the suppression firefighters see with the 120-hour rule is that they can use up the 120 hours in the 2-week drill period, leaving nothing left over for the monthly weekend obligations. In contrast, the 8-hour-per-day firefighters use only 80 hours of paid leave in the-2-week drill period and have some time left over to cover weekends. The suppression firefighters claim that the policy is discriminatory in violation of USERRA.

   USERRA prohibits discrimination by, among other things, denying any benefit of employment on the basis of the employee's membership in the uniformed services. It does not expressly require paid military leave. An employer violates the Act by denying a benefit of employment to an employee if the employee's "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . ." Prior to USERRA, which was enacted in 1994, the predecessor statute--the Vietnam Era Veterans' Readjustment Assistance Act of 1974--required a plaintiff to show that his military status was the sole factor in the employer's decision.

   USERRA aside, firefighters' schedules, which are rather unusual, have caused a number of problems in the interpretation of state statutes that require paid leave for military service. Apparently, the Indianapolis solution--transforming the requirement for a number of days of paid leave into a requirement for a certain number of hours--is a common one and one which has been challenged in other jurisdictions. For instance, in Howe v. City of St. Cloud, 515 N.W.2d 77 (Minn. App. 1994), over a dissent, the Minnesota Court of Appeals ruled that the city must

pay firefighters for 24 hours for every 24-hour shift they're off work, up to 15 days per year. That is what the Indianapolis firefighters would like. If they were given paid leave for 15 24-hour days, they could receive 360 hours--three times as much paid military leave as the nonsuppression firefighters and most other state or municipal employees.

Our concern in this federal case is not whether a policy like the one in Indianapolis is contrary to a proper interpretation of the Indiana statutes, an issue, by the way, recently resolved against two Lawrence Township (Indiana) firefighters by the Indiana Court of Appeals. See Strode v. Koppin, Cause No. 49A02-0103-CV-148 (January 15, 2002). Our concern under USERRA is whether the suppression firefighters were discriminated against and whether their membership in the military was a motivating factor behind the discrimination. The firefighters state their claim as a disparate impact claim: "[T]he gravamen is not that the City intentionally sought to single out firefighters who are members of the militia for unfavorable treatment, but rather that the City's ordinance and policy had that impact because of their military status." (Emphasis in the original.) What it comes down to is determining what is causing the alleged disparity in benefits between the two groups, suppression and nonsuppression, firefighters.

A disparate impact is the result of practices "which on their face are neutral in their treatment of different groups but which in fact fall more harshly on one group than another." Equal Employment Opportunity Commission v. Francis W. Parker School, 41 F.3d 1073 (7th Cir. 1994). At some future time it may become necessary for us to decide whether a disparate impact claim can be prosecuted under USERRA. We do not always allow such claims. For instance, we do not recognize disparate impact claims in this circuit under the Age Discrimination in Employment Act. See, e.g., Salvato v. Illinois Dep't of Human Rights, 155 F.3d 922 (7th Cir. 1998). We have also said that disparate impact is irrelevant to a challenge to a jury panel. See Alverio v. Sam's Warehouse Club, Inc., 253 F.3d 933 (7th Cir. 2001). But whether a disparate

impact claim can be prosecuted under USERRA will wait for another day. This case fails on the facts.

What USERRA does is prohibit discrimination based on military status. It is the State of Indiana that has affirmatively granted a benefit to those in the Reserves or National Guard in the form of paid leave. It is a benefit which other employees do not receive. For instance, firemen who volunteered 2 weeks each summer to work at a camp for disabled children would not receive paid leave.

The suppression firefighters claim that the way the benefit is distributed has a disparate impact on them which violates USERRA. In the most literal sense, the claim can be rejected because, in fact, everyone receives exactly the same benefit. The suppression firefighters receive as much paid leave as everyone else--120 hours. Nevertheless, the claim of disparate impact arises because 120 hours of paid leave may sometimes--though we have no evidence that this is true-- require the suppression firefighters to use unpaid leave or to alter their work schedule more often than do the nonsuppression firefighters. From this perspective, one can see that there is what might be called a disparate impact, but it a disparate impact on the suppression firefighters in the military as opposed to the nonsuppression firefighters in the military. Thus stated, the claim's fatal weakness is apparent.

Everyone in either group is a member of the military, which raises the fundamental question as to how a policy can have a disparate impact on certain people because of their military status and at the same time give an unfair advantage to another group of people because of their military status? The answer is that it cannot.

Any disparity in this case does not arise because of military service. The benefit arises from military service. The fact that, even though the benefit is equally distributed, it does not cover all of the duty time of suppression firefighters is not a result of their military service. They would not receive any of it except for their military

service. Rather, that 120 hours may not allow them paid leave for all of their duty obligations is a result of their work schedules.

If they were to get what they wanted--360 hours of paid leave--and everyone else were to receive 120 hours, that disparity also would be a result of the work schedules (and an interpretation of the Indiana statutes), not military service. It is beyond obvious that 360 hours of leave is more beneficial than 120 hours. But even were the Indiana statute ultimately interpreted to require, in the case of suppression firefighters, 15 24-hour days or 360 hours of paid leave, it does not follow that the current Indianapolis interpretation is a violation of USERRA. Furthermore, it is not clear on its face that the Indiana statute was intended to ensure that most public employees who are in the military would have paid leave for their entire yearly service obligation. Persons who work regular 8-hour shifts, but whose shifts fall, not on Monday through Friday, but include a weekend, would also be required to use unpaid leave. Fifteen days is simply not enough paid leave to cover a 2-week period plus an additional day per month in all situations. Yet 15 days is what is provided to everyone.

There could be circumstances under which suppression firefighters could have a claim. For instance, if the department determined that it was much more of a burden to have suppression firefighters take leave for military service than for other employees, and as a result the department refused to allow anyone in the military Reserves or the National Guard to become a suppression firefighter, those whose employment was affected could claim a violation of USERRA.

Certain individual plaintiffs may be attempting to state such a disparate treatment claim. Some contend department officials put pressure on them to resign from the military, thus harassing or constructively discharging them. The district court found that the plaintiffs offered no support for these claims except their own conclusory statements. We agree, and in addition, this is one of the unusual times when laches bars the claims.

Stephen K. Allison claims that in 1970, Chief Herbert Fulmer, who is now deceased, ordered him to resign from the National Guard. Similarly, John M. George claims that in 1970, Fulmer ordered him not to re-enlist in the Indiana National Guard. Thomas K. Poole alleges that in 1985, his district chief, who is now retired, and a battalion chief told him he had to choose between the fire department and the military Reserves. David Peed claims that a former chief who is also now deceased, William Alte, harassed him about his absences from work for military service. Peed alleges that Alte transferred him to a different district in 1969 and pressured him into resigning from the Indiana National Guard. Nathan Miller claims that then-Deputy Chief James Greeson told him that his participation in the National Guard "throws up a red flag" any time Miller was off work for sickness. F. Wayne Wright, who in 1983 filed a previous lawsuit similar to this one, claims that he was suspended four times in 1982 and 1983 for attending military duty. He also claims he was wrongfully deprived of vacation pay and required to take unpaid leave or to trade time with other firefighters.

The only evidence in support of any of these claims comes from the plaintiffs' own affidavits and answers to interrogatories. As the district court concluded, information in these documents is not sufficient to support a harassment claim. Such a claim must be supported by evidence that the employer's conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Some factors which are considered are the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. Harris v. Forklift Sys, Inc., 510 U.S. 17 (1993). The circumstances must be viewed from an objective perspective to determine whether a reasonable person would perceive the situation to be hostile. McKenzie v. Illinois Dep't of Transp., 92 F.3d 473 (7th Cir. 1996). Also, it is telling here that the fire department has not denied any requests by any of the plaintiffs for leaves of absence for

military service.

Furthermore, we conclude that these claims are barred by the doctrine of laches, which is "principally a question of the inequity of permitting a claim to be enforced." Lingenfelter v. Keystone Consol. Indus., 691 F.2d 339, 340 (7th Cir. 1982). Laches is based not on simply the passage of time, as is a statute of limitations, but rather upon changes of conditions or relationships. Galliher v. Cadwell, 145 U.S. 368 (1892). There must be a showing of both a lack of diligence on the part of the plaintiffs and prejudice to the defendants. See Costello v. United States, 365 U.S. 265 (1961). The plaintiffs bear the burden of explaining their delay in bringing suit. Lingenfelter.

Plaintiffs' claims relate to incidents which allegedly occurred many years ago. In some cases the alleged perpetrators are dead or retired. In addition, plaintiffs do not offer any reasonable explanation of the delay other than that they filed their claims within 5 years of the enactment of USERRA. This is a puzzling explanation. For one thing, were the enactment of the statute relevant, 5 years still seems like a long time to wait to prosecute claims from the 1960's, 1970's, and 1980's. Secondly, it might be that, if called upon to, we would determine, as have other courts, that USERRA does not have retroactive application. See Fernandez v. Department of the Army, 234 F.3d 553 (Fed. Cir. 2001); Newport v. Ford Motor Co., 91 F.3d 1164 (8th Cir. 1996). If so, the date of the enactment of USERRA is entirely irrelevant here. Also, the defendants are prejudiced by the delay in filing suit. Former Chiefs Fulmer and Alte, who allegedly discriminated against certain plaintiffs, are both deceased. Others are retired. Laches bars these claims.

The decision of the district court is AFFIRMED.

FOOTNOTE

/1 The amount of leave has been increased to 144 hours, but the increase is not relevant to our analysis.