In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1923

RICK MADDEN,

*Plaintiff-Appellant,*

*v.*

ROLLS ROYCE CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CV 00584—**Larry J. McKinney**, *Judge.*

ARGUED JANUARY 13, 2009—DECIDED APRIL 29, 2009

Before BAUER, POSNER, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 *et seq.*, forbids discrimination in employment on the basis of military service. The plaintiff is a member of the U.S. Air Force Reserve (oddly, the record does not indicate the precise nature of his work for the Air Force, but it seems to involve the refueling of aircraft). He was hired by Rolls Royce, which though it is a famously English company has American facilities, for a temporary

position as a "process engineer," who designates the steps to be followed in a manufacturing process. Robin Savin, who hired and supervised the plaintiff, was a graduate of Purdue's engineering program and was suitably impressed when the plaintiff told him that he had a degree in aeronautical engineering from Purdue. But the plaintiff made many mistakes in his new job—which is not surprising, because he was not a graduate of Purdue; he had flunked out. At the end of the 90-day period for which he had been hired, Savin (who did not know about the resumé fraud), because there was not enough work for all the process engineers, decided to terminate the plaintiff rather than giving him a permanent position or terminating another temp, who had done a better job than the plaintiff. But according to the plaintiff, Savin, when he told the plaintiff the bad news, did not complain about the plaintiff's performance but instead said that since the plaintiff was about to be called for a stint of active duty with the Air Force, he should be the process engineer to be terminated.

Later the plaintiff applied for an engineering job with the codefendant, DS&S (Data Systems and Solutions), a supplier to (and now owned by) Rolls Royce. He was turned down and again says that the hiring officer referred (albeit obliquely) to his military obligations as a factor in turning him down. But before he would have been hired for the permanent job that he was seeking, there would have been a check of his credentials and work record, and not only his resumé fraud but also his poor work for Savin (the first probably, the second certainly) would have come to light and doomed his chances

for being hired, regardless of his military obligations. Although Savin had hired him without a careful check of his credentials, it was for a temporary job for a fellow alumnus (he thought) of Purdue. In fact, the hiring officer for DS&S did try to verify the plaintiff's references and was unable to do so, which may well have been the real reason he didn't offer the plaintiff a job.

The district judge granted summary judgment for the defendants with respect to both the refusal to give the plaintiff a permanent job and the later refusal of DS&S to hire him.

The cases say that if the plaintiff in a suit under the reemployment statute presents evidence that his military obligations were "a motivating factor" or "a substantial or motivating factor" in his failing to be hired, or of his being discharged, the burden shifts to the defendant to show that the plaintiff wouldn't have been hired, or would have been fired, even if he had had no military obligations. *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002); *Dean v. Consumer Product Safety Commission*, 548 F.3d 1370, 1374 (Fed. Cir. 2008); *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16-17 (1st Cir. 2007); *Hill v. Michelin North America, Inc.*, 252 F.3d 307, 311-12 (4th Cir. 2001); *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1014-15 (Fed. Cir. 2001). This is a common approach in employment discrimination cases, whatever the type of discrimination alleged. E.g., *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 396-97 (1983); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977); *Tejada-Batista v. Morales*,

424 F.3d 97, 101 (1st Cir. 2005). All that is meant is that if the defendant had two reasons for taking an adverse action against the plaintiff, one of them forbidden by the statute and the other not, and the defendant can show that even if the forbidden one had been absent the adverse action would still have been taken, the plaintiff loses.

Although the defendant has the burden of proving that the adverse action would have been taken in any event, so compelling and so meagerly contested is the proof offered by the defendants in this case, with respect to both adverse actions of which the plaintiff complains, that a trial would be a waste of time. The plaintiff's work as a process engineer under Savin's direction was dangerously incompetent. Probably Savin's telling the plaintiff that he wasn't being retained because he wouldn't be around anyway (if that is indeed what he said, which he denies) was a way of letting him off lightly rather than having to tell him to his face that he was no good. But whatever Savin said or meant, it is plain from the plaintiff's performance that he was not going to be given a permanent job when Savin had to lay off one of his process engineers and when the one he retained in lieu of the plaintiff was the superior worker.

Similarly, had the hiring officer for DS&S been initially inclined to hire the plaintiff on the basis of his false representations regarding his educational qualifications, before a formal offer would have been tendered the company's human resources division would have discovered the plaintiff's poor work record and his resumé fraud and he would not have been hired, regardless of his military

status. Allowing someone who is not an engineer to do engineering work on aircraft parts, when he had lied about his credentials and confirmed the lie by his poor performance of the job for which he had been hired but was not qualified, would be the height of irresponsibility and could get the employer into serious trouble.

But the plaintiff argues that whatever we might think as an original matter, he was entitled to go to trial by the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). The defendant in that case had fired the plaintiff for an illegal reason. The plaintiff sued, and in the course of pretrial discovery the defendant discovered facts about the plaintiff that, had the defendant known them when it fired him, would have provided a lawful ground for firing him that doubtless would have caused him to be fired as soon as it was discovered. The Court held that this was not a defense to the plaintiff's suit for employment discrimination because the only ground on which he had been fired was an illegal one, and so his rights had been violated. The ground discovered in the course of pretrial discovery would have justified the employer in firing the plaintiff *upon discovering the ground*, but the only significance of this point was that, had the employer proved that it would have fired the plaintiff as soon as it discovered that ground, the plaintiff could obtain no damages for lost earnings after that date.

This would be a similar case if the only lawful reason the defendants would have had for not hiring the plaintiff (or, in the first episode, for not hiring him for a perma-

nent job) was resumé fraud, for this was discovered only after they refused to hire him. But the first refusal to hire was based on his incompetent performance, discovered before the refusal, and the defendant in the second episode would have discovered the disqualifying facts about the plaintiff (certainly his poor work record and probably his resumé fraud as well) *before* hiring him, so the discriminatory motive could have had no consequence. In the *McKennon* case the discriminatory motive did have a consequence—it resulted in the plaintiff's discharge sooner than would otherwise have happened.

There are other issues, but none that requires discussion.

AFFIRMED.