**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4202
_____

JOHN J. MURPHY,
                    Appellant

v.

RADNOR TOWNSHIP

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-11-cv-04743)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit LAR 34.1(a)
(Submitted: July 8, 2013)
_____

Before: GREENAWAY, JR., SLOVITER, and BARRY, *Circuit Judges*.

(Opinion Filed: October 23, 2013)

_____

OPINION
_____


GREENAWAY, JR., *Circuit Judge*.

John Murphy ("Murphy") appeals the District Court's grant of summary judgment

in favor of Radnor Township ("Radnor") on his claim of discriminatory treatment under

the Uniformed Services Employment and Reemployment Rights Act of 1994

("USERRA"), 38 U.S.C. § 4301 *et seq.*, and the Pennsylvania Military Affairs Act

("PMAA"), 51 Pa. Cons. Stat. Ann. § 7301 *et seq.* For the reasons provided below, we

will reverse.

## I. BACKGROUND

As we write primarily for the benefit of the parties, we recount only the essential

facts. Because we are reviewing the grant of Radnor's motion for summary judgment,

we view the facts in the light most favorable to Murphy. *See Scheidemantle v. Slippery

Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

Murphy joined the Air Force in 1997 and served on active duty until 2002. Since

2002, Murphy has served in the Active Reserves and currently holds the rank of Major.

In June 2009, Murphy applied for the position of Township Manager for Radnor. After

Murphy submitted his application materials, he received a phone call from Radnor's then

Interim Township Manager, John Granger ("Granger"), asking Murphy to come in for an

interview before Radnor's Board of Commissioners ("Board"). Seven other applicants

were selected for a first-round interview. On June 27, 2009, before the scheduled

interview, Murphy's brother, a Congressman from Pennsylvania, called and left a

message for Commissioner Thomas Masterson ("Masterson"). Masterson testified at his

deposition that the message was brief: Congressman Murphy stated that he was calling on

behalf of his brother and asked that his call be returned. Masterson did not return the

phone call.

2

The interview was conducted on July 22, 2009 before four members of Radnor's Board: Masterson, John Fisher ("Fisher"), Enrique Hervada ("Hervada"), and Harry Mahoney ("Mahoney"). Granger was also present. The interview lasted approximately 45 minutes, during which Masterson spent ten minutes questioning Murphy on his military obligations, including how many days he was absent during his previous employment due to his military duties and how Radnor would be affected by any future military obligations. Murphy contends that Masterson also specifically asked him how many days he would be absent due to future military obligations. Murphy responded that he would be absent approximately 35 days per year. In response to these questions, Murphy offered to go on inactive reserves in order to secure the job.

This line of questioning ended after Granger became concerned about the legality of these questions and intervened. Following Granger's interruption, the commissioners turned to other topics of discussion, including how Murphy's past military experience and civilian employment suited him for the position of Township Manager.

On July 27, 2009, Granger spoke to Murphy on the phone, informing him that he was not being asked to return for a second-round interview. Although Granger does not remember the contents of the conversation, Murphy contends Granger told him that, while Murphy was in the Board's top four choices, the Board was not going to invite him back for a second-round interview. Murphy also maintains Granger specifically told him that the Board had "serious reservations about [his] ongoing military obligation." (App. 173.) None of the other applicants interviewed or offered a second-round interview have

3

a military background or current military obligations.

Murphy subsequently filed suit against Radnor, alleging violations of USERRA and PMAA. Following discovery, the District Court granted summary judgment in favor of Radnor. *Murphy v. Radnor Twp.*, 904 F. Supp. 2d 498 (E.D. Pa. 2012). The District Court held that, although Murphy had met his burden in proving that his military obligations were a motivating factor in Radnor's decision not to hire him, Radnor "presented evidence of numerous legitimate non-discriminatory reasons, other than [Murphy's] military obligations" sufficient to overcome the claims. *Id.* at 515. Specifically, the District Court concluded that Murphy could not withstand the summary judgment motion because Radnor "adduced sufficient evidence from which no reasonable jury could find that its reasons for not hiring Murphy were invalid." *Id.* at 514. Murphy timely appealed.

We believe that the District Court erred by requiring Radnor to show that no reasonable jury could find its reasons for not hiring Murphy as invalid. This is not the standard required under USERRA. Instead, USERRA requires that Radnor show a legitimate reason for not hiring Murphy that is "so compelling" and "so meagerly contested" that there is no genuine dispute that Murphy would not have been hired regardless of his future military obligations. We do not believe Radnor has met the USERRA standard as a genuine dispute of fact exists on whether Radnor would have hired Murphy absent his future military commitments.

4

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 38 U.S.C. § 4323, 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo, using the same standard as the district court. *Pichler v. UNITE*, 542 F.3d 380, 385 (3d Cir. 2008). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also United States v. Donovan*, 661 F.3d 174, 184-85 (3d Cir. 2011). We are not only to view the facts in the light most favorable to the non-moving party, but we must draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and are thus inappropriate at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## III. ANALYSIS

A. USERRA

5

USERRA was enacted, in part, "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). USERRA prohibits discrimination in employment on the basis of military service. The operative section of this Act provides:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

An employer violates USERRA if "the person's membership [in the military] is a motivating factor in the employer's action." *Id.* 4311(c)(1). The employer will not be in violation of the Act, however, if "the employer can prove that the action would have been taken in the absence of such membership." *Id.* Thus, as the District Court properly noted, "the statute, by its terms, prohibits discriminatory actions where a person's military status is simply *a* motivating factor, not *the* sole motivating factor." *Murphy*, 904 F. Supp. 2d at 504.

USERRA, by its own terms, establishes a two-step burden-shifting framework by which to analyze such claims.[1] First, the plaintiff alleging the discriminatory act bears

---

[1] USERRA was enacted in response to the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559 (1981), in which the Supreme Court interpreted USERRA's predecessor (Vietnam Era Veterans' Readjustment Assistance Act of 1974), to require that an employee's military status be the sole motivation for the employer's action. *See Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

the initial burden of showing that the "employee's military service was a substantial or motivating factor in the adverse employment action." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (internal quotation marks omitted).

> A motivating factor does not mean that it had to be the sole cause of the employment action. Instead, it is one of the factors that a truthful employer would list if asked for the reasons for its decision. Indeed, [m]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.

*Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005) (alteration in original) (internal quotation marks and citations omitted).

If the plaintiff meets his burden, the burden of proof then shifts to the employer, who must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service.[2] *Sheehan*, 240 F.3d at 1013. This standard of proof is the "but for" test. *Coffman*, 411 F.3d at 1238. "All that is meant [by this standard] is that if the [employer] had two reasons for taking an adverse action against the [employee], one of them forbidden by the statute and the other not, and the [employer] can show that even if the forbidden one had been absent the adverse action would still have been taken, the [employee] loses."[3] *Madden v. Rolls Royce Corp.*, 563 F.3d 636, 638 (7th Cir. 2009).

---

[2] The statute is explicit that the employer carries the burden of proof once the plaintiff has made his initial showing. 38 U.S.C. § 4311(c).

[3] To note, this two-step framework differs starkly from the familiar *McDonnell Douglas* three-step framework used in most employment discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas*

7

Courts have thus held that summary judgment for the employer is appropriate if the employer can produce uncontested evidence that it would have taken the adverse employment action even in the absence of an improper motive. *See, e.g.*, *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002) (holding that the standard on summary judgment is whether the employer "has established as an uncontroverted fact that it would have terminated [the employee] even if he had not been a member of the [military forces]"); *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 314 (4th Cir. 2001) (granting summary judgment where employer presented evidence which "clearly established that it would have fired [the employer for the proffered reasons] even in the absence of any improper motive"); *see also Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 17 (1st Cir. 2007) ("[T]he employer must show, by a preponderance of the evidence, that the stated reason was *not* a pretext; that is, that the action *would* have been taken in the absence of [the employee's military] service." (alterations in original) (internal quotation marks omitted)). "Although the [employer] has the burden of proving that the adverse action would have been taken in any event," summary judgment is appropriate where the employer's evidence is "so compelling and so meagerly contested . . . that a trial would be a waste of time." *Madden*, 563 F.3d at 638.

---

framework, unlike here, the burden of persuasion always remains with the employee. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Discrimination may be proven through circumstantial evidence. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996). This is because discrimination is often subtle, *Aman v. Cort Furniture Rental Co.*, 85 F.3d 1074, 1082 (3d Cir. 1996), and not "open or notorious," *Sheehan*, 240 F.3d at 1014. We may thus reasonably infer discriminatory motivation under USERRA from a variety of factors,

> including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.*

In the case at bar, the District Court concluded that Murphy had satisfied his initial burden because he "ha[d] adduced sufficient direct evidence that his military commitments were a substantial or motivating factor" in Radnor's decision to not extend a second-round interview. *Murphy*, 904 F. Supp. 2d at 506-07. We agree.

Murphy alleges, and Granger and the commissioners confirmed, that the Board engaged in an extended line of questioning regarding Murphy's military obligations, including the specific number of days Murphy's absence is required per year. This particular line of questioning was substantial and lengthy enough that Granger felt compelled to intervene. Additionally, Murphy asserts that Granger specifically told him that the Board declined to grant him a second-round interview because of his "ongoing military obligations," a conversation that caused Murphy sufficient concern that he wrote

9

down notes about the call soon after it took place. We find that this evidence is sufficient for Murphy to satisfy his initial burden.

The District Court then undertook the task of analyzing the evidence in light of the burden shift to Radnor. Although the District Court correctly recited the two-step burden-shifting framework under USERRA, we believe the District Court committed error by holding Radnor to a lower standard than that required under the statute. Specifically, the District Court held that, despite the evidence that Murphy's military obligation was a motivating factor, Radnor's proffered "legitimate, non-discriminatory" alternative reasons for not offering Murphy the job were "sound and well-supported" and "no reasonable jury could find that its reasons for not hiring Murphy were invalid." *Murphy*, 904 F. Supp. 2d at 505, 514. This is not the standard. Under USERRA, the employer does not merely have the burden of producing a legitimate, non-discriminatory reason; rather the employer has the burden of producing a legitimate reason for the adverse employment action that is so overwhelming, "so compelling," and "so meagerly contested" that there is no genuine dispute that the employee would have received the same treatment regardless of his future military obligations. *Madden*, 563 F.3d at 638. Having clarified the correct standard, we believe that Radnor's proffered reasons for not hiring Murphy fail to meet it.

Radnor proffered several non-discriminatory reasons for its decision not to hire Murphy: (1) that the other candidates were more qualified than Murphy; (2) that Murphy had exaggerated the extent of his prior municipal experience; (3) that Murphy's

10

application was riddled with typos and errors; and (4) that the call from Murphy's brother to Masterson was inappropriate and led the commissioners to question Murphy's character.

The District Court underwent a thorough analysis of the qualifications of the other candidates who were offered the position and concluded that all possessed qualifications that Murphy did not and that Radnor's assertion that they all were substantially more qualified than Murphy was reasonable. Indeed, several of the candidates have more than 20 years of experience in municipal service, compared to Murphy's seven. But while Radnor insists that each and every candidate offered the job was objectively more qualified than Murphy, it has not presented evidence so compelling and so meagerly contested that it conclusively demonstrates Murphy would not have received an offer of employment despite his future military obligations. *See id.* at 637, 639 (affirming grant of summary judgment under USERRA where the employee had lied about having a graduate engineering degree and was "dangerously incompetent" at his job).

For example, the District Court found that candidate Christopher Canavan ("Canavan") was more qualified than Murphy because his prior municipal experience was in a township whose governing structure was more similar to Radnor's than was that of Wilkes-Barre. But other factors suggest that Murphy was more qualified than Canavan in other ways. Canavan had six months less than Murphy's seven years' experience in municipal government. Moreover, in his position as City Administrator for Wilkes-Barre, Murphy managed a $40 million budget in a city of 44,000; Canavan

11

managed a town of 17,500 residents with a $12 million budget. Radnor has thus failed to meet its burden of producing evidence so compelling that no reasonable jury could possibly determine that based on his qualifications, and irrespective of his future military obligations, Murphy would not have been hired for the job.

We also do not believe that Murphy's exaggeration of his duties as City Administrator for Wilkes-Barre is a sufficient justification to overcome any genuine dispute. There is no dispute that Murphy was City Administrator during Wilkes-Barre's financial turnaround. There is also no dispute that Wilkes-Barre enlisted the services of an outside consulting firm. But we are not convinced that this fact — the use of an outside consulting firm — so diminished Murphy's accomplishments as City Administrator that it compels a finding in Radnor's favor. Moreover, neither Commissioner Hervada, nor Commissioner Higgins, could recall the alleged exaggeration as being a basis for declining to grant Murphy a second round interview. Where the decision makers do not agree as to the proffered reason for the adverse employment action, we cannot say that the evidence is "so compelling" as to mandate summary judgment.

Radnor's remaining two proffered reasons do not bolster its proof beyond dispute. Although some commissioners testified that they viewed Murphy's brother's call as a negative, Commissioner Hervada testified that it did not surprise him and he was not

aware that others viewed it in a negative light.[4]  Indeed, a jury may find the contents of the phone call so innocuous, that it may discredit the commissioners' testimony that the call had any effect at all.  And while there is no dispute that typos and errors exist in Murphy's application, we cannot ignore Murphy's testimony that Granger explicitly told him that his "ongoing military obligations" were a primary concern for the Board in not extending the second-round interview.

Even when viewed in the aggregate, we cannot say that Radnor's four proffered reasons are compelling enough to leave no dispute.  *Accord Hill*, 252 F.3d at 310-11 (4th Cir. 2001) (finding that no genuine dispute existed as to whether employer would have fired employee who falsified time cards despite military service where the employer presented uncontroverted evidence that its policy was to terminate all employees who intentionally falsified their time cards).

Because Radnor has failed to produce evidence that is so overwhelming and compelling as to leave no genuine dispute that Murphy would not have been hired regardless of his future military obligations, we must reverse the grant of summary judgment as to the USSERA claim.[5]

B. <u>PMAA</u>

---

[4] This certainly implies that the issue may not have been discussed among the commissioners during their decision-making process.
[5] Likewise, because we will reverse in light of all the evidence, we need not address Murphy's argument that the testimony of all interested parties should be disregarded at the summary judgment stage.  (*See* Appellant Br. 17-20.)

Like USERRA, PMAA prohibits discrimination by employers on the basis of military service. Under PMAA,

> [i]t is unlawful for the Commonwealth or any of its departments, boards, commissions, agencies or any political subdivision, or for any private employer, to refuse to hire or employ any individual not on extended active duty because of his membership in the [military] . . . or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment because of such membership . . . .

51 Pa. Cons. Stat. Ann. § 7309(a).

As the District Court recognized, there is scant case law in our Circuit on this statute. "In the absence of a Pennsylvania Supreme Court ruling on the precise question of law presented, we must predict how it would resolve the question." *Klein v. Weidner*, --- F.3d ---, 2013 WL 4712752, *2 (3d Cir. 2013). In the employment-discrimination context generally, Pennsylvania courts apply the *McDonnell Douglas* framework. *See, e.g.*, *Allegheny Hous. Rehab. Corp. v. Pa. Human Relations Comm'n*, 532 A.2d 315, 317-19 (Pa. 1987); *Garner v. Pa. Human Relations Comm'n*, 16 A.3d 1189, 1198 (Pa. Commw. Ct. 2011).

PMAA provides, however, that, "[i]t is the intent of this title that it shall be in conformity with all acts and regulations of the United States affecting the same subjects, and all provisions of this title shall be construed to effectuate this purpose." 51 Pa. Cons. Stat. Ann. § 103. Therefore, under PMAA's very terms, we believe PMAA should be interpreted in conformity with USERRA, and we will apply the same two-step burden-shifting framework to claims brought under PMAA as we do to claims under USERRA.

14

We have already applied the two-step framework to Murphy's USERRA claim and determined that reversal was required. Analyzing Murphy's PMAA claim under the same framework yields the same result.

## IV.    CONCLUSION

For the foregoing reasons, we will reverse the District Court's grant of summary judgment and remand for further proceedings.