NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2946
_____

JOHN J. MURPHY,
                    Appellant

v.

RADNOR TOWNSHIP
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cv-04743)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit LAR 34.1(a)
March 20, 2015

Before:  SMITH, JORDAN and SLOVITER *Circuit Judges.*

(Filed: March 20, 2015)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Plaintiff John J. Murphy ("Murphy") filed this suit against the Township of Radnor ("Radnor") alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Pennsylvania Military Affairs Act ("PMAA"). Specifically, he alleged that Radnor failed to hire him for the position of Township Manager based on his military obligations in the United States Air Force Reserves. After a six-day trial, the jury returned a verdict finding that Murphy's military obligations were a motivating factor in the failure to hire him but that Radnor would have denied Murphy employment even if it had not considered his military obligations. The District Court then denied Murphy's motion for a new trial. Murphy appealed. We will affirm.[1]

I.

We write primarily for the parties and assume their familiarity with the facts. In brief, Murphy entered the Air Force in 1997 and remained on active duty until 2002, when he transitioned into the active reserves. While in the reserves, Murphy was required to report for reserve duty 35 days per year. In 2009, Murphy applied for the position of Township Manager for Radnor. Murphy was interviewed on July 22, 2009 by the Interim Township Manager John Granger ("Granger") and four Commissioners on Radnor's Board of Commissioners (collectively "the Board" or "the Commissioners"):

---

[1] The District Court had jurisdiction over the USERRA claim pursuant to 38 U.S.C. § 4301 *et seq.* and 28 U.S.C. § 1331. The District Court had jurisdiction over the state-law PMAA claim pursuant to 28 U.S.C. § 1367. We have jurisdiction over the final order and judgment of the District Court pursuant to 28 U.S.C. § 1291.

Hank Mahoney, Enrique Hervada, John Fisher, and Chairman Tom Masterson ("Masterson"). According to Murphy, during the interview, he was "grilled," primarily by Masterson, about his reserve requirements. App. at 198-99. Masterson allegedly expressed concerns about who would do the Township Manager's work when Murphy was fulfilling his reserve duties, and Granger purportedly interjected and referenced federal prohibitions on discrimination in employment decisions based upon an individual's membership in, or obligations to, the military. Murphy testified that on July 27, 2009, Granger called and informed him that the Board had decided not to bring him back for a second interview and that a few of the Board members "had serious concerns about [Murphy's] ongoing military commitment." App. at 205-10.

Granger denied ever saying this, and he and the Board members testified that Murphy's military obligations were not the reason that Murphy was not selected for a second interview. According to their testimony, the Commissioners believed that Murphy had overstated his accomplishments in his resume. Specifically, his resume claimed that he had developed a plan for economic recovery in Wilkes-Barre when in reality he had simply implemented a plan that was developed by an outside consulting firm. The Commissioners also testified that other candidates were more qualified for the position than Murphy.

Masterson—allegedly as a result of his antimilitary animus—also informed the other Commissioners about two additional issues relating to Murphy's candidacy. First, Masterson pointed out typographical errors in Murphy's cover letter, but he did not do the same with the submissions of other candidates who were given second interviews

3

despite the existence of spelling and typographical errors in their cover letters. Second, Masterson informed the Board about a voicemail he received from Murphy's younger brother, Patrick Murphy, a Congressman from Pennsylvania. Murphy's brother's voicemail stated, "This is Congressman Pat Murphy. I am calling in support of or about my brother J.J. Murphy's application to be Township Manager in Radnor. Please call me." App. at 753. According to some of the Commissioners, the call was troubling because they did not want political interference with the selection or operations of the Township Manager.

Masterson testified that, following the first round of interviews, the consensus of the Commissioners was that Robert Zienkowski ("Zienkowski"), Dave Kraynik ("Kraynik"), and Peter Miller ("Miller") were the top candidates, and all three were offered second interviews. Before his second interview, Zienkowski withdrew from the process because of a family illness. After their second interviews, Kraynik and Miller were offered the position, but they both turned it down. At that point, the Commissioners decided to offer Chris Canavan ("Canavan") a second interview because he interviewed well and came with good recommendations. Canavan was offered the position, but he too rejected it. After Canavan rejected the position, Zienkowski re-entered the process and was ultimately offered the position, which he accepted in March 2010.

Murphy filed suit against Radnor alleging violations of the USERRA and the PMAA. The District Court subsequently granted summary judgment to Radnor. Murphy appealed, and this court reversed, reasoning that the District Court had applied the wrong standard under USERRA for summary judgment. *See Murphy v. Radnor Twp.*, 542 F.

4

App'x 173 (2013). The matter proceeded to a six-day trial between February 24, 2014 and March 5, 2014. The jury returned a verdict in favor of Radnor. The jury decided Murphy proved "by a preponderance of the evidence that his obligation for service in the military was a motivating factor in Radnor Township's decision not to hire him for the position of township manager," but also found that Radnor proved "by a preponderance of the evidence that it would have denied Mr. Murphy the position of Township Manager even if Radnor Township had not taken Mr. Murphy's obligation for service in the military into account." App. at 948.

Murphy then moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a). The District Court denied this motion. Murphy filed a timely Notice of Appeal.

## II.

## A.

Murphy's first issue raised on appeal is whether the District Court erred in refusing to instruct the jury on the "cat's paw" theory of liability under the USERRA. "We review the District Court's refusal to give specific jury instructions for abuse of discretion, but exercise plenary review over whether the District Court gave a correct statement of law in its jury instructions." *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011). "When a jury instruction is erroneous, a new trial is warranted unless such error is harmless. An error is harmless if it is 'highly probable' that the error did not contribute to the judgment." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011) (citation omitted).

5

Both USERRA and PMAA, in pertinent part, prohibit employment discrimination on the basis of membership in, or the obligation to perform service in, the military. *See* 38 U.S.C. § 4311(a); 51 Pa. Cons. Stat. § 7309. Pursuant to USERRA:

> An employer shall be considered to have engaged in actions prohibited . . . if the person's membership, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, . . . or obligation for service.

38 U.S.C. § 4311(c)(1). The analysis of a PMAA claim mirrors that of a claim under USERRA. *See* 51 Pa. Cons. Stat. § 103.

The cat's paw theory of liability under USERRA, adopted by the Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), provides that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194 (footnotes omitted). Based on *Staub*, at trial, Murphy requested the following jury instruction:

> If a participant in the decision-making process performs [an] act motivated by antimilitary animus that is intended by the participant to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under [USERRA], notwithstanding that the participant did not make the ultimate employment decision.

App. at 14. Radnor objected to Murphy's proposed instruction, reasoning that *Staub*'s cat's paw theory applied where a supervisor influenced the decision making of others with regard to a subordinate, but here, "there wasn't any testimony that anybody was

6

influenced" by Masterson. App. at 828. The District Court agreed and denied the requested instruction.

Murphy argues that Masterson, who led the interview, exhibited an antimilitary animus against Murphy and should be treated as a supervisor for purpose of application of the cat's paw theory. The District Court held, and Radnor argues on appeal, that *Staub*'s cat's paw theory applies only where there is a "nonbiased decision-maker [who] is influenced by a biased managerial employee." *See Tucker v. Thomas Jefferson Univ.*, 484 F. App'x 710, 713 (3d Cir. 2012). Moreover, "[n]one of the Commissioners testified that they . . . were influenced by Masterson in the way they voted." Appellee's Br. at 37.

The District Court further reasoned, and Radnor also argues on appeal, that even if the cat's paw instruction should have been given to the jury, the failure to do so was harmless because "the cat's paw issue was only relevant to the first question on the verdict sheet, *i.e.*, whether the military obligation was a 'motivating factor.'" *Id.* at 41-42; App. at 16-17 (quoting *Staub*, 131 S. Ct. at 1191 ("The central difficulty in this case is construing the phrase 'motivating factor in the employer's action.'")). The jury found in Murphy's favor on this first question, and the second question, on which the jury found against Murphy, "does not concern what is a motivating factor." App. at 17. Thus, Murphy could not have been prejudiced by any error.

We agree with the District Court that any alleged error in the failure to give the requested instruction was harmless. Even assuming the failure to give the proposed instruction was erroneous, we conclude that it is "'highly probable' that the error did not

7

contribute to the judgment," and, the error, if any, was harmless. *Harvey*, 635 F.3d at 612.

B.

Murphy also appeals the District Court's decision to permit Radnor to present the testimony of Miller, Kraynik, and Canavan, the three candidates who, following a second interview, were offered the position of Township Manager in 2009. The District Court concluded that the testimony of Miller, Kraynik, and Canavan was relevant and should be admitted.

We affirm the District Court's ruling on the admission of the witnesses' testimony for substantially the reasons stated by the District Court. The admission of evidence is firmly rested within the judgment of the district court, and we review for abuse of discretion. *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Given the clear relevancy of the qualifications of the candidates and the fact that witnesses typically are permitted to testify as to their present employment as background information, the District Court did not abuse its discretion in admitting this testimony over Murphy's objection.

III.

Accordingly, we will affirm the judgment of the District Court.

8