Donald Panarello                          :

v.                          :

State of Rhode Island, Department of          :
Corrections et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Donald Panarello          :

                    v.          :

State of Rhode Island, Department of          :
          Corrections et al.

          Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Robinson, for the Court.** The plaintiff, Donald Panarello, appeals from a

judgment entered on November 26, 2010 after a lengthy jury-waived trial in the Superior Court.

In the detailed decision that underlies that judgment, the trial justice ruled that the State of Rhode

Island Department of Corrections (DOC) had not engaged in employment discrimination against

the plaintiff.[1]

This case stems from plaintiff's allegation that he was subjected to discrimination based

on his military status when the DOC denied him promotion on three separate occasions. The

plaintiff concedes that the trial justice correctly <u>articulated</u> the burden-shifting method of proof

applicable in employment discrimination cases brought under the Uniformed Services

---

[1]     The Employees' Retirement System of Rhode Island had also been named as a defendant
at the commencement of this civil action, but it reached a settlement with plaintiff after the trial
concluded and before the trial justice rendered her decision. Accordingly, the claims against that
entity were dismissed with prejudice by the Superior Court on November 9, 2009.
Consequently, the trial justice's decision focused only on the remaining defendant, the DOC.

Employment and Reemployment Rights Act of 1994 (USERRA), as codified in 38 U.S.C. §§ 4301 through 4335, and the parallel state statute which is entitled "Employment Rights of Members of Armed Forces," G.L. 1956 chapter 11 of title 30. However, plaintiff contends that the trial justice incorrectly applied the burden-shifting method. The plaintiff further asserts that what he considers to be relevant and material evidence supportive of his "prima facie" case of employment discrimination was overlooked or misconceived by the trial justice.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in favor of defendant.

**I**

**Facts and Travel**

Donald Panarello became a member of the Rhode Island Air National Guard in 1983. He was hired by the DOC as a corrections officer in 1988. Subsequently, in June of 2000, he left his full-time employment at the DOC in order to report for active duty with the Rhode Island Air National Guard in the "Counterdrug Operations Program"—eventually returning to the DOC in September of 2006, after having been on military leave for some six years. The plaintiff contends that the discrimination which he allegedly suffered arose out of the tension between his military and civilian careers during the years when he was on military leave. Specifically, he contends that the DOC's failure to promote him to lieutenant on three occasions during the six-year period was motivated by his military leave status in violation of the above-referenced provisions of federal and state law.

On October 21, 2003, plaintiff filed a declaratory judgment action requesting relief from the Superior Court with respect to the DOC's alleged discrimination. A bench trial was held during July and August of 2009, which ultimately culminated in the trial justice's decision in

November of 2010, in which she ruled that judgment should enter in favor of defendant because plaintiff had failed to satisfy his burden of proof. In view of plaintiff's contention on appeal that the trial justice overlooked and misconceived material evidence, it will be necessary to discuss in some detail the most relevant testimony elicited at trial.

**A**

**The Plaintiff's Witnesses**

**1. The Testimony of George Truman, Jr.**

George Truman, Jr. was the first witness called by plaintiff. Mr. Truman was the Associate Director of Human Resources at the DOC when the events at issue in the instant case took place. By the time of trial he had retired from the DOC. Mr. Truman testified about the promotional process for corrections officers in general and about Mr. Panarello's situation in particular. We summarize below the essential portions of his testimony.

Corrections officers interested in promotion to the position of lieutenant would begin the process by sitting for a written examination.[2] Those who score high enough on that examination are deemed qualified for promotion. When lieutenant positions become available, typically the candidates with the highest scores on the written examination are granted interviews before an interview panel;[3] at those interviews, each candidate is asked the same set of questions. It is uncontested that, by that point in the process, a candidate's examination score is no longer of significance; a sufficiently high score earns a candidate entry to the interview process, but it then

---

[2] The promotional process within the DOC falls under the aegis of Rhode Island's Merit System statute, which is codified in G.L. 1956 chapter 4 of title 36.

[3] Mr. Truman testified that it is possible that one or other of the candidates interviewed would not have been a candidate with a top examination score—because, for example, a candidate may decide that he or she is not interested in being promoted at that time or may be unavailable.

ceases to play any further role. Each panelist ranks every candidate's answers to the above-referenced set of questions individually, and then the scores awarded by the various panel members are combined to provide each candidate with an overall interview score. The panel then compiles a list of the candidates ranked according to their overall interview scores. The panel also makes specific recommendations as to which candidates should receive a second interview.[4] Those recommendations do not necessarily reflect the overall interview scores; for example, a candidate who ranked sixth in overall interview score could still be recommended by the panel as the top candidate to fill an open lieutenant position. The recommended candidates are then interviewed by Ashbel T. Wall (Director of the DOC) and an associate director.[5] The ultimate decision as to who will be promoted is made by Director Wall.

Mr. Panarello sat for the written examination in 1999, and he placed "7-B" out of hundreds of examinees. In 2001, there were five vacant lieutenant positions for which twelve corrections officers, including plaintiff, were interviewed. Seven candidates were then recommended to be promoted to lieutenant. The plaintiff was not one of them.

In January of 2002, plaintiff wrote to Mr. Truman contending that his military leave status had had "a negative impact on [his] promotion to Lieutenant" and stating that there was "absolutely no reason to justify not promoting" him. He alleged in the letter that Director Wall himself had told him that he would not be promoted while on military leave and that David Caruso, one of the members of the 2001 interview panel, had "chastised" him for appearing at the interview in his military uniform. The plaintiff concluded his letter by expressing his wish to

---

[4]     Mr. Truman testified that interview panels sometimes make recommendations and sometimes do not. It was, however, the testimony of Ashbel T. Wall (Director of the DOC) that interview panels usually do make a recommendation.

[5]     Whenever we refer to an interview in this opinion we are referring to the initial round of interviews.

be promoted "immediately in the order which [he] scored on the [written] exam," with seniority backdated to April of 2001. As a consequence of plaintiff's letter, a meeting was held between Mr. Truman and plaintiff. While Mr. Truman testified that he had no recollection of that specific meeting, plaintiff testified that such a meeting did take place—although he added that the only result therefrom was Mr. Truman's statement at the meeting that Director Wall made the final decision about promotions.

In May of 2002, there were additional vacancies for a position as a lieutenant, and Mr. Panarello was once again interviewed. Mr. Caruso was again a member of the interview panel. The plaintiff acknowledged, while being cross-examined at trial, that members of the panel were aware that he was on military leave because he brought his military service to the attention of the panel while explaining the significance of the USERRA to them. After participating in the interview process this second time, Mr. Panarello was again not recommended for promotion.[6] On May 2, 2002, plaintiff sent Mr. Truman another letter alleging that his active duty status had again had a negative effect on his chances for promotion to lieutenant. In that letter, plaintiff alleged that Walter Whitman, a 2002 interview panelist, had told him that "as long as [he was] out on military leave [he] would not be eligible for promotion to the position of [lieutenant]."

The third incident of alleged discrimination occurred in June of 2002, when plaintiff was offered a "three-day rule" appointment as a lieutenant for a temporary period.[7] The offer was

---

[6]     Mr. Truman testified that the management staff at the DOC in 2001 and 2002 was not familiar with the requirements of the USERRA. At trial, Mr. Truman acknowledged that in his deposition he used the word "clueless" to describe the level of familiarity which the DOC management staff had with respect to the USERRA. Lieutenant Colonel Denis Riel of the Rhode Island National Guard testified that he conducted a USERRA training session at the DOC in 2006.

[7]     With respect to the "three-day rule" Mr. Truman testified that, when there is a vacant position for an extended period of time due to the fact that an individual is on some type of leave,

withdrawn when plaintiff informed the DOC that he was not available to start immediately due to the fact that he was on military leave.[8] Mr. Truman testified that being immediately available was a prerequisite to a "three-day rule" appointment. The plaintiff responded to having the offer of a "three-day rule" position withdrawn due to his unavailability by sending another letter to Mr. Truman alleging that "the discrimination [he] encountered while on military leave [was] an ongoing issue."

Finally, as plaintiff testified, he was promoted to lieutenant, in 2007, after his return from military leave.

### 2. The Plaintiff's Testimony

After Mr. Truman's testimony, plaintiff took the stand. With respect to the 2001 promotional process, Mr. Panarello testified that, when he "showed up for the panel," Mr. Caruso asked him why he was wearing his military uniform and then stated: "It's not going to look good." Moreover, plaintiff stated that he had scored higher on the written examination than four of the five people who were selected for promotion. He further testified that he and his wife had encountered Director Wall and his wife at the Providence Place Mall a few weeks before Christmas in 2000. According to plaintiff, when discussing the likelihood of promotion while

---

the DOC can fill that position by "taking someone of lower rank and placing them into [the] position * * * ." In his testimony, Mr. Truman characterized such a personnel action as "a temporary appointment;" and he further testified that an individual can stay in a "three-day rule" position for only six months before he or she will lose seniority benefits from his or her previous position. According to Mr. Truman's testimony, the decision as to whom to appoint to a "three-day rule" position is confided to the sole discretion of Director Wall. The "three-day rule" was also sometimes referred to as the "eleven-day rule" in the trial testimony.

[8] Mr. Truman acknowledged that plaintiff had told him that, if he were offered a promotion, he would leave military service and return to the DOC. However, plaintiff testified that he still would not have been able to start immediately due to the necessity of: (1) giving adequate notice that he was leaving his military position; and (2) training a replacement.

plaintiff was on military leave, Director Wall stated: "I would not promote you to a position of lieutenant if you're not here to do the job. I need someone to do the job."[9]

Mr. Panarello next testified about his 2002 interview, and he indicated that panel member Carol Getter had remarked about the fact that he was on active military duty. In addition, plaintiff testified that Walter Whitman (also a panel member) told him that "it would not be a good management move to promote [him] to the position of lieutenant;" plaintiff added, however, that Mr. Whitman also stated that Director Wall would make the ultimate decision.[10] And he also acknowledged that Mr. Whitman commended him for his military service.

The plaintiff then proceeded to testify with respect to the "three-day rule" position (see footnote 7, supra) that was offered to him in June of 2002; he stated that he was asked to start working in that position right away[11] but that he told the person who offered him the position that he would not be able to start until late August or early September due to his military duties. It was plaintiff's further testimony that he was not given the "three-day rule" position because he could not start immediately—whereas, he added, he later learned that the position was not filled until late October or early November.

---

[9] The plaintiff's wife, Maryann Panarello, gave confirmatory testimony at trial with respect to plaintiff's testimony about the chance meeting with Director Wall at the Providence Place Mall.

[10] The plaintiff acknowledged at trial that Mr. Whitman's statement came in response to his own question to Mr. Whitman about his chances of promotion to lieutenant.

[11] The plaintiff testified that he was offered the position on a Friday and was expected to start the following Monday.

The plaintiff further testified that, when he returned to the DOC in 2006, he once again sat for the written examination for promotion to lieutenant—this time ranking 27A.[12]  Thereafter, in September of 2007, he was promoted to lieutenant.  He stated at trial that, except for the fact that he had obtained a bachelor's degree in 2007, his qualifications had not changed dramatically from the 2001 and 2002 interviews to the time of his promotion in 2007.

On cross-examination, plaintiff acknowledged that in his deposition he had expressed his understanding that the written examination score was without significance once a candidate received an interview.  He further recognized, in testifying on cross-examination, that his interview score in 2001 ranked him eleventh of twelve candidates.  The plaintiff also admitted to bringing his military service to the attention of the 2002 interview panel of his own accord.  Specifically, he testified that he thought that he needed to educate the interview panel about the USERRA.  His cross-examination also elicited the following facts: (1) that he was unaware that there are National Guard regulations prohibiting the wearing of a National Guard uniform to a civilian interview; (2) that his interview score in 2002 ranked him fifth of seven candidates; (3) that he did not review current DOC policies before his 2002 interview, despite the fact that they were available at the training academy; (4) that one of the candidates selected for promotion in 2002, one Joseph Mullensky, also had a military background; and (5) that the other candidate selected in 2002 was one William Bove, who had approximately twenty years of managerial experience and ten years of labor relations experience.

---

[12]    In 2006, Mr. Panarello sat for the written examination for promotion to lieutenant a second time because, pursuant to § 36-4-22(a)(1)(ii), a "promotion list[]" generated from a written examination for promotion is only "in effect for a period of three * * * years * * * ."

### 3. The Testimony of Joseph Forgue, Jr. and John Lavery

After plaintiff's testimony concluded, two additional witnesses were presented on his behalf—Joseph Forgue, Jr. and John Lavery.

At the time of trial, Mr. Forgue was a DOC Special Investigator. He testified that he had served in the Rhode Island National Guard and that the DOC had failed to select him for an interview for promotion to lieutenant in 2001 and 2002 even though he had passed the written examination for lieutenant and was ranked eleventh; he further stated that, when he returned from active duty, he expressed interest in serving as the Chief of the Special Investigations Unit on a temporary "three-day rule" basis but was not given that opportunity. He added that he was not given the "materials or opportunity" to take a make-up written examination upon his return from a 2004 deployment. Mr. Forgue indicated at trial that he believed being away on military leave put him at a disadvantage with respect to being promoted. However, he did acknowledge in his testimony on cross-examination that he had served as temporary Chief of the Special Investigations Unit on a number of occasions and that he was later interviewed for the position of Chief on a permanent basis, although someone else was ultimately selected.

At the time of trial, Mr. Lavery was a DOC training instructor; he had served in the Massachusetts National Guard for approximately twelve years, receiving an honorable discharge in 2002. He alleged in his testimony at trial that, upon his return from overseas duty, he was informed by the DOC that he still had to complete a six-month probationary period which had started before his military leave. According to his testimony, he took issue with the DOC's position on his probationary period because he believed that the probationary period should have expired while he was on military leave. He further testified that he had engaged in a dispute with the DOC concerning bidding rights, pay, retirement, sick time, and vacation time due to the

DOC's requirement that he serve the remainder of his probationary period upon returning from military leave, but he acknowledged that the bidding rights issue was resolved in his favor.

B

**The Witnesses for the Defense**

**1.  The Testimony of Carol Getter**

Carol Getter was a correctional officer who held the rank of lieutenant when she served on the 2002 interview panel.  At the time of trial she had retired from the DOC after more than thirty years of service.  She testified that, when serving on the interview panel, she looked for a candidate who was self-confident, who was knowledgeable about departmental policies and procedures, and who would represent the department in a "beneficial light."  Ms. Getter stated at trial that plaintiff arrived for the interview wearing his military uniform, mentioned that he was on military leave, and specifically told the panel that, according to law, his active duty status could not be held against him with respect to promotion.  She further testified that, from her perspective, plaintiff's military uniform was a "positive factor;" she also stated that she did not recall any comments by other panel members about the uniform.

It was Ms. Getter's further testimony, however, that plaintiff acknowledged during the interview before the panel that he was not up-to-date on DOC policies and procedures; she added that he asked that he be allowed to "shadow" another lieutenant for a couple of weeks if he were to receive the promotion.  She stated on cross-examination that it would have been possible for plaintiff to brush up on DOC policies even though he was on military leave.

Ms. Getter stated that plaintiff's military status did not affect her interview score, but she did acknowledge on cross-examination that she factored his absence from the DOC into her score.  Specifically, she testified that she indicated in her interview notes that plaintiff was not

- 10 -

available for immediate service as a lieutenant in order to alert the pertinent officials in case the position required an immediate presence. Ms. Getter testified that, while plaintiff could have been promoted while on military leave, it was her belief that absence "should be a factor" in deciding whom to promote. She noted at trial that the individuals whom she scored higher had impressive computer skills and were knowledgeable about policies and procedures; she noted that one had even developed a "spork"[13] utensil for the DOC, which saved money.

## 2. The Testimony of Walter Whitman

The next witness, Walter Whitman, a former warden at the DOC, also served on the 2002 panel. At the time of trial he had retired from the DOC. He testified that all candidates for promotion were asked the same questions and that knowledge of departmental policies and procedures was the most important criterion assessed at the interview. He also corroborated Ms. Getter's testimony that plaintiff arrived at the 2002 interview in his military uniform and suggested to the panel that, in view of federal law, his active military status should "have a positive impact on his candidacy for promotion." Mr. Whitman testified that, during the interview he concluded that plaintiff's knowledge of policies and procedures was "average." He further testified that plaintiff's military leave status did not factor into the score he gave plaintiff on any of the questions. He also stated in his testimony, however, that he told plaintiff at the interview that plaintiff's availability would have an impact and that plaintiff "may want to consider that before he [reached] the next level of interview[s]." Mr. Whitman further testified that availability would have an impact if he were making the decision because "practical matters" had to be taken into account; he acknowledged that he believed that holding a position

---

[13] A "spork" is defined as "[a]n eating utensil having a spoonlike bowl and tines." The American Heritage Dictionary of the English Language 1692 (5th ed. 2011).

vacant for someone on leave would not be a "good management decision."  Mr. Whitman also stated that plaintiff's military status would not be looked upon unfavorably, but he also stated that "there's an operational consideration. His unavailability would have had an impact on his candidacy."  It is noteworthy, however, that the score recorded by Mr. Whitman was the highest score that plaintiff received from the members of the 2002 interview panel.

### 3.   The Testimony of Robert McCutcheon

Robert McCutcheon served on the 2001 interview panel.  He testified that his own notes from the 2001 interview of Mr. Panarello stated: "Candidate gave an average interview." Despite plaintiff's "average" interview, Mr. McCutcheon scored only five candidates higher than plaintiff out of the twelve candidates interviewed.  He testified that his notations at the interview indicated that plaintiff should not be promoted at that time but that he felt plaintiff would be a good candidate when he had "a little more time on the job."  It was Mr. McCutcheon's testimony that his view that plaintiff should not be promoted at that time was not due to the fact that plaintiff was out on military leave.

### 4.   The Testimony of David Caruso

David Caruso was a deputy warden who sat on all three interview panels which evaluated plaintiff for promotion—in 2001, 2002, and 2007.  At the time of trial, he had retired from the DOC.  He testified that, when serving on an interview panel, he looked for some knowledge of DOC policies and procedures.  When asked at trial if he had "chastised" plaintiff for wearing his military uniform to the 2001 interview, he replied: "Not to my recollection."  Mr. Caruso also testified that he did not remember anything particular about plaintiff's appearance at the 2001 interview; he added that he did not remember making any comment at all about plaintiff's appearance at that interview.  Mr. Caruso stated at trial that some of the other candidates in 2001

and 2002 had a greater depth of knowledge than plaintiff, and he affirmed that plaintiff's military leave status did not factor into the score that he submitted. Additionally, it was Mr. Caruso's testimony that plaintiff was better prepared in 2007 and performed better at that interview than he had in his previous interviews. On cross-examination, Mr. Caruso acknowledged that the chairman of the 2001 panel, Tom Partridge, submitted seven names to the Director, and he also acknowledged that they were not the seven highest ranking interview candidates.

With respect to plaintiff's performance at the 2001 interview, Mr. Caruso's notes, which were a full exhibit at trial, state that plaintiff "lacked knowledge of minimum standards;" and, as to one question, the notes state that plaintiff "missed the most important points." Mr. Caruso's notes from the 2002 interview, when referring to plaintiff, read in pertinent part as follows: (1) "Does not appear to have prepared himself for a Correctional Lieutenants [sic] position — But he is however well versed for the military — Although there are similarities he should have put more effort in the position being sought;" and (2) "shallow in what he [thought] a lieutenant should do." [14]

### 5. The Testimony of Cynthia Drake

The defendant also called Cynthia Drake, who was a DOC deputy warden both at the time of trial and when she served on the 2001 interview panel evaluating Mr. Panarello. It was her testimony that a successful candidate for promotion to the position of lieutenant "really needs to know policy [and] procedures [of the DOC]." Ms. Drake testified that plaintiff was dressed in his "fatigues" at the 2001 interview; but she stated that she did not consider his military status when deciding what score to award. She further testified that Mr. Panarello received a low score because his answers were not sufficiently complete. Ms. Drake also corroborated Mr. Caruso's

---

[14] In the passages from Mr. Caruso's 2001 and 2002 interview notes quoted in the text, we have conformed the capitalization of letters.

- 13 -

testimony that the 2001 panel leader, Mr. Partridge, deviated from the interview rankings when recommending candidates to the Director.

### 6. The Testimony of Silma-Del Langley and Sergio DeSousarosa

Silma-Del Langley and Sergio DeSousarosa, both of whom served on the 2007 interview panel, also testified. Ms. Langley testified that she had known plaintiff prior to the 2007 interview and that she observed a great improvement in plaintiff's manner of thinking between the time when she worked with him in the early 2000s and when she worked with him again in 2006. She testified that her notes reflected her observation that plaintiff had reviewed DOC policies prior to the interview and that she had recommended him for promotion. Mr. DeSousarosa asserted in his trial testimony that he did not factor plaintiff's military status in his scoring of plaintiff's interview.

### 7. The Testimony of Ashbel T. Wall

Ashbel T. Wall, Director of the DOC, testified concerning the determination of whom to promote; he stated that he considers the scores of the candidates recommended by the interview panel, any comments on the interview forms, personnel records, absentee records, letters of recommendation, disciplinary records, résumés, and any other information that the candidate chooses to provide. However, he added that it is his practice to look at the interview score sheets and other information pertaining only to those individuals who were recommended by the interview panel. Director Wall stated in his testimony on cross-examination that interview panelists should not consider a candidate's military status or military-related absence in the interview process, but he also acknowledged that he was not aware of any training at the DOC in 2001 or 2002 relative to discrimination against members of the military. Additionally, he

testified that the task of filling temporary "three-day rule" positions is left to the assistant director of the relevant division.

When questioned about the statement that he allegedly made to plaintiff at the Providence Place Mall, regarding his possibility of promotion while on military leave, Director Wall acknowledged that he did encounter plaintiff at the Mall, but he stated that he did not recall plaintiff asking about his chances of promotion. He added that he did not think that at that time he even knew that plaintiff was on military leave, and he stated that it would have been out of character for him to have made the alleged statement. Director Wall's wife, Maria DeCarvalho, supported his testimony, stating that, while she did not remember the specific Providence Place Mall encounter with plaintiff, she could not recall any interaction with a DOC employee where Director Wall told the employee he or she would not be promoted while on military leave. Ms. DeCarvalho further testified that she would have been surprised to hear such a statement from her husband because he had expressed pride that the DOC is one of the largest sources of military personnel in Rhode Island.

## C

### The Superior Court's Rulings

On January 22, 2009, the trial justice issued a preliminary decision in which she addressed certain matters relative to the instant case. In that decision, the trial justice ruled that the two-part burden-shifting paradigm, which was employed by the United States Court of Appeals for the First Circuit in its scholarly opinion in the case of Velázquez-García v. Horizon Lines of Puerto Rico, 473 F.3d 11, 17 (1st Cir. 2007), articulated what she deemed to be the appropriate method for evaluating a case brought under the USERRA. Specifically, the Velázquez-García analysis requires the employee alleging a violation of the USERRA to

demonstrate, by a preponderance of the evidence, that his or her protected status was "a substantial or motivating factor" in the adverse employment action. Id. (internal quotation marks omitted). The burden of proof then shifts to the employer to show, again by a preponderance of the evidence, that the adverse employment action would have been taken in the absence of the employee's military service. Id. The trial justice concluded that this analytical approach should be employed with respect to plaintiff's federal claims under the USERRA and also with respect to his parallel state claims.

Neither party disputes the pertinence of the Velázquez-García analytical approach. The dispute on appeal centers on the trial justice's application of that analytical approach.

In the lengthy decision that she rendered on November 23, 2010, the trial justice considered the testimony of seventeen witnesses, forty exhibits, and the post-trial memoranda filed by the parties. She proceeded to find that Mr. Panarello had not met his burden of proving that his absence due to military service was "a substantial or motivating factor" in the DOC's decision not to promote him to lieutenant in 2001 and 2002. Specifically, with respect to the evidence that Mr. Panarello produced which he contended was indicative of anti-military bias in the promotional process, she found that: (1) Director Wall's testimony regarding his conversation with plaintiff at the Providence Place Mall was the more credible version of events; (2) David Caruso's alleged comments regarding plaintiff's military uniform at the 2001 interview were not demonstrative of bias; and (3) Walter Whitman's comments regarding plaintiff's availability, while "ill-advised," did "not rise to the level needed to prove discrimination by the DOC * * * ." She held that there was no evidence that plaintiff's unavailability due to military service affected the score that Mr. Whitman accorded him after the interview or that Mr. Whitman's comments had any effect on the DOC officials (including

Director Wall) who were responsible for reviewing the interview results and conducting second interviews.

The trial justice further ruled that the DOC provided sufficient evidence to show: (1) that plaintiff was not one of the best candidates in 2001 and 2002; and (2) that he was a "much-improved" candidate in 2007. In 2001, according to the trial justice, the evidence showed that plaintiff was not sufficiently knowledgeable about DOC policies and procedures. The trial justice provided an example from the notes of Mr. Partridge, the chairperson of the 2001 interview panel; those notes state that Mr. Panarello had given a "shaky answer [and was] unsure where to proceed;" they further state that, with respect to a question about policies and procedures, plaintiff was "weak—not sure of answer. [V]ery broad * * * ." The trial justice also cited Mr. Caruso's notes, which stated that Mr. Panarello "lacked knowledge in minimum standards" and "missed the most important points."[15] The trial justice further found that, by the time of the 2007 interview process, plaintiff had received a bachelor's degree in criminal justice and had studied DOC policies and procedures in more depth. In view of the just-referenced steps that plaintiff had taken to improve his fitness as a candidate, the trial justice ruled that the fact of plaintiff's success in the 2007 process did not serve as proof that "the DOC improperly used bias in denying him promotion in 2001 and 2002."

With regard to the temporary "three-day rule" promotion offered to Mr. Panarello in 2002, the trial justice found that a "three-day rule" position required immediate availability. She also faulted plaintiff for failing to provide any evidence that "three-day rule" positions were ever given to anyone on leave. Thus, she held that plaintiff had not met his burden of proving that his

---

[15] In the passages quoted from the interview notes of Mr. Partridge and Mr. Caruso, we have conformed the capitalization of letters.

unavailability due to his military status was a consideration with respect to his appointment to a "three-day rule" position in a manner that violated the USERRA.

The plaintiff timely filed a notice of appeal.

## II

### Standard of Review

When a trial justice presides over an action for declaratory judgment, the justice makes "all findings of fact without a jury." Houde v. State, 973 A.2d 493, 498 (R.I. 2009). We have consistently held that our review of both a decision by the Superior Court granting or denying declaratory relief and "the factual findings of a trial justice sitting without a jury is deferential." Pelletier v. Laureanno, 46 A.3d 28, 35 (R.I. 2012) (internal quotation marks omitted); Houde, 973 A.2d at 498; see also State v. Gianquitti, 22 A.3d 1161, 1165 (R.I. 2011) ("This Court consistently has held that factual findings of a trial justice sitting without a jury are granted an extremely deferential standard of review."); Cahill v. Morrow, 11 A.3d 82, 86 (R.I. 2011) ("This Court gives great weight to the factual findings of a trial justice sitting without a jury in a civil matter * * * .") (internal quotation marks omitted); Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005) ("A decision to grant or deny declaratory * * * relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law."). "If our review of the record before us indicates that competent evidence supports the [trial] justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." Greensleeves, Inc. v. Smiley, 68 A.3d 425, 434 (R.I. 2013) (internal quotation marks omitted). As such, we will not disturb a trial justice's factual findings unless they are "clearly erroneous or * * * the trial justice misconceived or overlooked material

- 18 -

evidence or * * * the decision fails to do substantial justice between the parties." Cahill, 11 A.3d at 86 (internal quotation marks omitted); see also Greensleeves, Inc., 68 A.3d at 433-34; Grady v. Narragansett Electric Co., 962 A.2d 34, 41 (R.I. 2009). A trial justice's assessment of credibility is granted the same level of deference. Dowdell v. Bloomquist, 847 A.2d 827, 830 (R.I. 2004). The trial justice's factual findings and credibility determinations are given deferential review because they are made by "the judicial officer who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In re Dissolution of Anderson, Zangari & Bossian, 888 A.2d 973, 975 (R.I. 2006). We also accord deference to a trial justice's "'resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * * .'" Nye v. Brousseau, 992 A.2d 1002, 1008 (R.I. 2010) (quoting Houde, 973 A.2d at 498); see also Haviland v. Simmons, 45 A.3d 1246, 1256 (R.I. 2012). However, in contrast to our deferential review of factual findings and credibility determinations, we conduct a de novo review of a trial justice's "conclusions of law." Gianquitti, 22 A.3d at 1165; Grady, 962 A.2d at 41.

### III

### Analysis

### A

### The Legal Framework

We commence our analysis by summarizing the relevant legal framework that will control our subsequent scrutiny of the trial justice's findings of fact and her conclusions of law.

Traditionally, in employment discrimination cases, this Court has applied the "three-part burden-shifting paradigm set forth by the United States Supreme Court" in McDonnell Douglas

- 19 -

Corp. v. Green, 411 U.S. 792, 802-04 (1973). McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012). In such cases, we initially require a plaintiff to establish a prima facie case by proving four elements: (1) that plaintiff is "a member of the protected class * * * ; (2) [that plaintiff] applied for an open position; (3) [that plaintiff] was not selected; and (4) [that] the employer 'filled the position by hiring another individual with similar qualifications.'" Casey v. Town of Portsmouth, 861 A.2d 1032, 1037 (R.I. 2004) (quoting Gu v. Boston Police Department, 312 F.3d 6, 11 (1st Cir. 2002)). Once the plaintiff has established a prima facie case, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff, and the burden of production then "shifts" to the employer to articulate a nondiscriminatory reason for the adverse employment action at issue. McGarry, 47 A.3d at 280; Neri v. Ross-Simons, Inc., 897 A.2d 42, 49 (R.I. 2006). What "shifts" at this juncture is only the burden of production, not the burden of persuasion. McGarry, 47 A.3d at 280. If the employer satisfies this burden of production, the above-referenced presumption of discrimination "disappears." Id. At that point, the burden of proof then "fall[s] * * * upon the plaintiff to demonstrate that [the employer's] tendered explanation is only a pretext and that discrimination was the true motive underlying the hiring decision." Id. at 280-81.

It is important to note, however, that plaintiff's declaratory judgment claim in this case arose under the USERRA, which specifically addresses employment protections for members of the armed services. The USERRA provides that "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or

obligation." 38 U.S.C. § 4311(a). The USERRA further reads in pertinent part: "An employer shall be considered to have engaged in actions prohibited * * * under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service * * * ."[16] 38 U.S.C. § 4311(c)(1). When it enacted G.L. 1956 § 30-11-3(b), the General Assembly adopted all the protections of the USERRA for National Guard members on state active duty.[17] Consequently, the trial justice held that the traditional, McDonnell Doulgas three-part burden-shifting paradigm was not applicable to USERRA cases—a ruling which the parties do not contest on appeal.[18] The burden-shifting paradigm to be applied in employment discrimination claims under the USERRA is an issue of first impression for this Court. In discussing the USERRA, its history, and the appropriate burden-shifting paradigm to be applied in USERRA cases, we have been enlightened and assisted by looking to the First Circuit's thoroughly researched and well-reasoned decision in Velázquez-García, 473 F.3d at 17, for guidance, as did the trial justice. See generally Shoucair v. Brown University, 917 A.2d 418, 426 (R.I. 2007)

---

[16] The USERRA has been analyzed and discussed in a scholarly article entitled From the Desert to the Courtroom: The Uniformed Services Employment and Reemployment Rights Act. See Andrew Sparks, From the Desert to the Courtroom: The Uniformed Services Employment and Reemployment Rights Act, 61 Hastings L.J. 773 (2010).

[17] General Laws 1956 § 30-11-3(b) reads: "In addition to the provisions provided in this section, all National Guard members on state active duty shall be entitled to the rights, protections, privileges, and immunities offered under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) * * * ."

[18] The trial justice also determined that plaintiff's claim arose under 38 U.S.C. § 4311 of the USERRA, rather than §§ 4312 and 4316. That ruling has not been appealed.

(holding that it is appropriate to look to federal discrimination decisions for guidance); Casey, 861 A.2d at 1036.

In Monroe v. Standard Oil Co., 452 U.S. 549, 559 (1981), in which the United States Supreme Court construed the statutory predecessor to the USERRA, the Court held that claims of employment discrimination due to military status could succeed only if the employee could show that any discrimination which he or she suffered was "solely" due to his or her military status. See also Velázquez-García, 473 F.3d at 16. In response to the decision in Monroe, Congress passed the USERRA. Id. The House of Representatives Report which accompanied the new statute stated that the Supreme Court's interpretation in Monroe of the legislative intent behind the predecessor statute was in error. Id. (citing H.R. Rep. No. 103-65 at 24 (1994) reprinted in 1994 U.S.C.C.A.N. 2449, 2457). Specifically, the Report indicated that the Congressional intent as to the earlier statute had been that, once a prima facie case was established, then the burden of proof was to be placed on the employer.[19] Id. The House Report "called * * * for the application of the burden shifting framework" set forth in NLRB v. Transportation Management Corp., 462 U.S. 393 (1983).[20] Velázquez-García, 473 F.3d at 16. The Transportation Management Corp. decision addressed unfair labor practice claims under the National Labor Relations Act, and it set forth a burden-shifting paradigm in which "the employee first has the burden of showing, by a preponderance of the evidence, that his or her

[19]    It should be noted that the First Circuit quoted the House Report in order to explain the genesis of the USERRA and not to clarify the meaning of the statute, which it did not characterize as ambiguous.

[20]    The Supreme Court's 1983 ruling in NLRB v. Transportation Management Corp., 462 U.S. 393 (1983) was abrogated in part by Director, Office of Workers' Compensation Programs, Department of Labor v. Greenwich Collieries, 512 U.S. 267, 276-78 (1994). The latter case dealt specifically with a footnote in Transportation Management Corp. regarding the Supreme Court's interpretation of a section of the Administrative Procedures Act. It does not affect our analysis in the instant case.

protected status was 'a substantial or motivating factor in the adverse [employment] action;' the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." Leisek v. Brightwood Corp., 278 F.3d 895, 899 (9th Cir. 2002) (quoting Transportation Management Corp., 462 U.S. at 401).

In Velázquez-García, the First Circuit adopted the substantial or motivating factor test set forth in Transportation Management Corp. for claims under the USERRA. Velázquez-García, 473 F.3d at 17. We are in full agreement as to the appropriateness of that test. It follows, as the night the day, that we perceive no error in the trial justice's decision to follow Velázquez-García and apply the substantial or motivating factor test. In so doing, we find ourselves in the company of the several federal Circuit Courts of Appeal that have addressed the issue to date. See Petty v. Metropolitan Government of Nashville-Davidson County, 538 F.3d 431, 446 (6th Cir. 2008); Velázquez-García, 473 F.3d at 17; Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1238-39 (11th Cir. 2005); Gagnon v. Sprint Corp., 284 F.3d 839, 853-54 (8th Cir. 2002);[21] Leisek, 278 F.3d at 899; Hill v. Michelin North America, Inc., 252 F.3d 307, 312 (4th Cir. 2001); Sheehan v. Department of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001); Gummo v. Village of Depew, New York, 75 F.3d 98, 106 (2d Cir. 1996).

We hold, as did the First Circuit in Velázquez-García, that in a USERRA action there must be an initial showing by an employee, by a preponderance of the evidence, that his or her military status, or accompanying unavailability, was "at least a motivating or substantial factor"

---

[21] The decision of the Court of Appeals for the Eight Circuit in Gagnon v. Sprint Corp., 284 F.3d 839, 853-54 (8th Cir. 2002) was abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 551 (8th Cir. 2005). However, the Eighth Circuit's decision to apply the two-part burden-shifting paradigm that is also reflected in Velázquez-García is still good law.

in the adverse employment action.[22] Velázquez-García, 473 F.3d at 17 (internal quotation marks omitted); Transportation Management Corp., 462 U.S. at 401; see McLain v. Somerville, 424 F. Supp. 2d 329, 334-35 (D. Mass. 2006) (holding that the USERRA prohibits discrimination based on military status and the unavailability resulting from an individual's service obligations). The burden of proof then shifts entirely to the employer to show, by a preponderance of the evidence, that the adverse employment action "would have been taken despite the [employee's] protected status." Velázquez-García, 473 F.3d at 17 (internal quotation marks omitted).

## B

### The Trial Justice's Decision

Although we have held that the trial justice's ruling regarding the analytical approach that should be applied in a case brought under the USERRA was not erroneous, plaintiff's principal bone of contention relates to the application of that standard to the facts of his case. Accordingly, we now turn to the trial justice's application of the substantial or motivating factor test to the facts of the instant case.

### 1. The 2001 and 2002 Interviews

In addressing plaintiff's contention that the trial justice improperly applied the USERRA burden-shifting paradigm, we begin by reiterating that we conduct a de novo review of the trial justice's application of that burden-shifting paradigm. See Gianquitti, 22 A.3d at 1165. As plaintiff correctly observes, it would be reversible error for a trial justice to apply the wrong burden of proof. See, e.g., State v. Casey, 71 R.I. 30, 34, 41 A.2d 757, 759 (1945) (finding error

---

[22] The First Circuit emphasized that the employee in a USERRA action need only show that his or her military status was a motivating factor, rather than the motivating factor, as was required in Monroe. Velázquez-García v. Horizon Lines of Puerto Rico, 473 F.3d 11, 17 (1st Cir. 2007) ("The language of the statute and the legislative history make clear that the employee need only show that military service was a motivating factor in order to prove liability * * * .") (emphasis in original) (internal quotation marks omitted).

- 24 -

in a trial justice's application of a civil burden of proof in a criminal case); see also M.M. ex rel. L.R. v. Special School District No. 1, 512 F.3d 455, 459 (8th Cir. 2008) ("Placing the burden of proof on the incorrect party is reversible error unless the error relates to an immaterial issue.") (internal quotation marks omitted).  However, in our judgment, the trial justice in the instant case did not make such an error.

Initially, we must address plaintiff's reading of Velázquez-García.  To support his argument that the wrong burden of proof was applied by the trial justice, Mr. Panarello avers that this case mirrors what actually transpired in Velázquez-García.  The plaintiff in Velázquez-García, 473 F.3d at 14, had worked for an ocean shipping and transportation business.  He alleged that he was fired because of his military status.  Id. at 15.  The district court granted summary judgment for the employer, but the First Circuit reversed, holding: (1) that the plaintiff had produced sufficient evidence for a reasonable jury to conclude that his military service was a motivating factor in his dismissal; and (2) that the district court, despite having properly articulated the standard to be applied in a USERRA action, had erred when it "implicitly follow[ed] the McDonnell Douglas framework" in determining that, even if the plaintiff had met his initial burden, the employer had adequately demonstrated that it had a non-pretextual reason for the plaintiff's firing.  Id. at 15, 17, 20.

While we have adopted the First Circuit's burden-shifting approach in Velázquez-García, we consider plaintiff's suggestion that there is a parallel between the procedural travel of that case and the travel of the instant case to be fatally flawed.  It must be emphasized that the First Circuit in Velázquez-García was reviewing the granting of a motion for summary judgment rather than a trial justice's decision after a full bench trial.  The trial justice in the instant case was tasked with determining whether plaintiff had shown by a preponderance of the evidence

that his military service was a substantial or motivating factor in the DOC's failure to promote him and, in turn, whether the DOC had met its burden of proof by a preponderance of the evidence; by contrast, the district court in Velázquez-García, in ruling on a motion for summary judgment, was required to determine whether there was a genuine issue of material fact regarding the employer's motivation in firing the plaintiff, and the district court was "constrained to perform this function without passing upon the weight or credibility of the evidence." Reniere v. Gerlach, 752 A.2d 480, 482 (R.I. 2000); see also Velázquez-García, 473 F.3d at 15. Consequently, Velázquez-García is simply not instructive with respect to the civil procedure criteria that are pertinent to the instant case.

In order to properly analyze plaintiff's contention that the trial justice improperly applied the USERRA burden-shifting paradigm, we must briefly discuss the legal framework relating to the employee's substantial or motivating factor burden of proof. To meet the substantial or motivating factor test, a plaintiff "need not show that [military status] was the sole cause" of the employer's actions, contrary to what plaintiff contends the trial justice required him to do, "but rather that it [was] one of the factors that a truthful employer would list if asked for the reasons for its decision." Bunting v. Town of Ocean City, 409 F. App'x. 693, 695-96 (4th Cir. 2011); Petty, 538 F.3d at 446; see Bradberry v. Jefferson County, Texas, 732 F.3d 540, 545 (5th Cir. 2013); see also 20 C.F.R. § 1002.22 (2006) ("The individual has the burden of proving that a status or activity protected by USERRA was one of the reasons that the employer took action against him or her, in order to establish that the action was discrimination or retaliation in violation of USERRA."). A plaintiff's "[m]ilitary status is a motivating factor if the [employer] relied on, took into account, considered, or conditioned its decision on that consideration." Coffman, 411 F.3d at 1238 (internal quotation marks omitted); see also Petty, 538 F.3d at 446.

As the DOC points out, a USERRA claim cannot be supported by "bare assertions of discrimination." See Becker v. Department of Veterans Affairs, 480 F. App'x. 988, 990, 991-92 (Fed. Cir. 2012); see also Vega-Colon v. Wyeth Pharmaceuticals, 625 F.3d 22, 28 (1st Cir. 2010) (stating that, in a USERRA action, an employee must "show evidence of discrimination other than the fact of non-selection and membership in the protected class") (internal quotation marks omitted). However, discriminatory intent or motivation may be proven by either direct or circumstantial evidence; as one federal appellate court has stated, "Circumstantial evidence will often be a factor in [USERRA] cases, for discrimination is seldom open [and] notorious." Sheehan, 240 F.3d at 1014. Other courts have held that discriminatory motivation on the part of an employer can be inferred from circumstantial evidence regarding the "proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Id.; see also Coffman, 411 F.3d at 1238.

Several federal Circuit Courts of Appeal have held that, in determining whether an employee has proven that his or her military status was a substantial or motivating factor behind the employer's conduct, a court may consider all record evidence, not merely that evidence which is supplied by the plaintiff; this includes the employer's explanation for its actions. Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 552 (8th Cir. 2005); Leisek, 278 F.3d at 900; Sheehan, 240 F.3d at 1014. If the employee meets the substantial or motivating factor test, the burden of proof shifts to the employer to show that it would have taken the same action regardless of the employee's military status; that is to say, its stated reason for taking the adverse

employment action was not a pretext. See Velázquez-García, 473 F.3d at 17 ("[T]he employer must show, by a preponderance of the evidence, that the stated reason was not a pretext * * * .") (emphasis in original); see also Madden v. Rolls Royce Corp., 563 F.3d 636, 638 (7th Cir. 2009) (Posner, J.) ("All that is meant is that if the [employer] had two reasons for taking an adverse action against the [employee], one of them forbidden by [the USERRA] and the other not, and the [employer] can show that even if the forbidden one had been absent the adverse action would still have been taken, the [employee] loses.").

The plaintiff argues, specifically, that the trial justice failed to properly apply the burden-shifting paradigm laid out in Velázquez-García when she erroneously kept the burden of persuasion on him at all times, requiring him to prove that the DOC's legitimate reasons for not promoting him were pretextual. Additionally, plaintiff maintains that the trial justice erroneously required him to prove that discrimination was the "sole cause" of the DOC's decisions not to promote him—rather than a substantial or motivating factor.[23]

The DOC, on the other hand, contends that the trial justice did not err in finding in the DOC's favor. It asserts that the trial justice's decision that plaintiff did not meet his burden of proof by showing that his military status was a substantial or motivating factor in the DOC's failure to promote him was properly derived from her findings regarding witness credibility and the weight of the evidence. Additionally, the DOC references case law stating that "stray workplace remarks, as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus," and it posits that plaintiff

---

[23] The plaintiff makes a final argument that, if the trial justice had applied the proper burden-shifting paradigm, she would have found that plaintiff established a prima facie case of discrimination in violation of the USERRA.

failed to present evidence showing that the stray military-related remarks made by Mr. Whitman and Mr. Caruso were a substantial or motivating factor in the DOC's ultimate decision not to promote plaintiff in 2001 and 2002. Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) (internal quotation marks omitted); see also Lehman v. Prudential Insurance Co. of America, 74 F.3d 323, 329 (1st Cir. 1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent."); see generally Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001).

Before turning to plaintiff's specific contentions, we take this opportunity to offer guidance on the appropriate method of applying the Velázquez-García burden-shifting paradigm in future USERRA cases. The trial justice in the instant case stated that her ultimate conclusion was that plaintiff had not met his burden of showing that his military status and resulting unavailability were a substantial or motivating factor in the decisions not to promote him in 2001 and 2002. In her rescript opinion, the trial justice did not expressly indicate that she was applying the second part of the USERRA burden-shifting paradigm—namely, whether the employer can show, by a preponderance of the evidence, that the same action would have been taken despite the employee's military status. Nevertheless, after carefully perusing that lengthy decision in its entirety, it has become clear to us that, while the trial justice explicitly referenced only the first part of the USERRA burden-shifting paradigm (the substantial or motivating factor test), in actuality her analysis encompassed both parts of the burden-shifting paradigm. It is also clear, as a matter of law, that the failure to explicitly discuss the two parts of the paradigm separately does not render the trial justice's decision erroneous. See Sheehan, 240 F.3d at 1015 ("Although the [lower court] did not separate the discrimination determination into two discrete parts, for the first of which the complainant bears the burden of proof, and for the second of

- 29 -

which the employer bears the burden of proof, its decision as a whole followed the strictures of the framework developed [for USERRA actions].").  However, it is our definite view that, in future USERRA cases, it would be decidedly preferable that the two parts of the burden-shifting paradigm be assessed separately.  This model would begin with an analysis of the evidence submitted by the employee and whether that evidence is sufficient to show, by a preponderance, that the employee's military service was a substantial or motivating factor in the employer's action; if the employee satisfies the first prong, the factfinder would then proceed to make an independent analysis of the remaining evidence and whether that evidence is sufficient to show, by a preponderance, that the employer has met its burden of proof by establishing that it would have taken the same action regardless of the employee's military service.  See Velázquez-García, 473 F.3d at 17.

That being said, we now proceed to plaintiff's first contention regarding what he considers to be the trial justice's inappropriate application of the USERRA burden-shifting paradigm.  The plaintiff submits that the trial justice erred when she was, according to plaintiff, of the view that, if the DOC presented any evidence of a legitimate motive for not promoting plaintiff, then she was not required to consider whether his military status was also a factor; in other words, according to plaintiff, the trial justice required him to prove pretext and failed to require the DOC to prove lack of pretext.  The plaintiff points specifically to the following statements by the trial justice: (1) "Plaintiff has failed to show by a preponderance of the evidence that he was a superior candidate to those chosen for promotion in 2001 and 2002. That failure is a sufficient reason not to promote a candidate. Military service would not have to play a 'substantial or motivating factor' for the panels to make the decisions made in 2001 and 2002;" (2) "Plaintiff failed to show that his 2007 interview performance was equal to or worse than his

interview performances in 2001 and 2002;" and (3) "The DOC has provided sufficient evidence that Panarello was not the best candidate for the promotion in 2001 and 2002. Therefore, Panarello's clothing did not have to come into consideration at all in the Department's decision to promote candidates other than Panarello to Lieutenant in 2001 and 2002." We agree with plaintiff that some of the statements made by the trial justice, when taken out of context, are less than felicitously worded. However, the trial justice's decision, when taken as a whole, demonstrates that she applied the appropriate burden of proof.

After laying out her findings of fact and the legal framework to be applied, the trial justice proceeded to discuss the motivating or substantial factor test with regard to plaintiff's 2001 and 2002 interviews. She stated that plaintiff had "provided a series of gray facts that did not reach the level of 'motivating or substantial factor' in consideration of his promotion to lieutenant." The trial justice did not fail to acknowledge Mr. Caruso's statement regarding plaintiff's uniform and what she characterized as Mr. Whitman's "ill-advised" statements to plaintiff regarding his unavailability and its impact on his promotion, but she then proceeded to find that there was no evidence that Mr. Whitman had factored plaintiff's unavailability into his score; and she also noted that plaintiff's score was approximately at the average of the scores that Mr. Whitman gave to all the applicants. Moreover, she found: (1) that there was no evidence that Mr. Whitman's views were considered at the time of the ultimate decision by Director Wall as to whom to promote; and (2) that Mr. Caruso's statement was not "demonstrative of bias against [plaintiff's] unavailability because of military obligations."

Ultimately, based on the testimony of the interviewers regarding plaintiff's qualifications, which the trial justice discussed in detail, and the trial justice's own credibility determinations, she held that plaintiff had not been promoted because he was less qualified than those individuals

who were selected for promotion—and not because of (even partly) his military status. See Mock v. Rome, 910 F. Supp. 2d 429, 432 (N.D.N.Y. 2012) (denying a plaintiff's motion for a judgment as a matter of law after a jury verdict in favor of the employer in a USERRA action because a jury could have concluded, after making credibility determinations, that the employer chose other individuals "more qualified and better suited for the position[]"). The trial justice also gave credence to the testimony that illustrated how significantly improved plaintiff as a candidate was in 2007, when he was ultimately promoted; and, taking that into account, she found that his promotion after his return from military leave was not evidence that he was not promoted in 2001 and 2002 due to his military unavailability. Thus, after ruling that Director Wall's testimony regarding his encounter with Mr. Panarello in 2000 was credible and weighing the previously discussed statements by certain panel members in 2001 and 2002 against all the other evidence on the record, especially the voluminous evidence tending to show that plaintiff was not the most qualified candidate for promotion in 2001 or 2002, the trial justice ruled that plaintiff had not met his burden. In the trial justice's statements, contested by plaintiff, regarding her determination that he had not provided any evidence to rebut the voluminous evidence that he was not the most qualified for promotion in 2001 and 2002, the trial justice was not, as plaintiff contends, improperly requiring him to prove pretext; she was appropriately taking all the evidence on the record, from both parties, into account in making her conclusion. See Leisek, 278 F.3d at 900; Sheehan, 240 F.3d at 1014. We are unable to perceive any error in the trial justice's ultimate conclusion that plaintiff could not prevail on his USERRA claim.

The plaintiff further contends that, since the trial justice found that military absence was referenced by some of the members of the 2001 and 2002 interview panels (specifically Mr. Whitman, Ms. Getter, and Mr. Caruso), the trial justice erred in then finding that Mr. Panarello

- 32 -

had not met his burden. He asserts that the USERRA prohibits any consideration of military unavailability; and he also contends that the USERRA burden-shifting paradigm does not require a consideration of military unavailability to be the sole factor in the decision to promote him, but rather only a factor in the decision. While plaintiff correctly asserts that the "USERRA is not a sole motive test," his approach to the standard seems to, in effect, remove the language "substantial or motivating" from the burden of proof that he must meet. See Petty, 538 F.3d at 446 (holding that for military service to have been "[a] motivating factor does not mean that it had to be the sole cause of the employment action [rather it had to be] one of the factors that a truthful employer would list if asked for the reasons for its decision") (internal quotation marks omitted). The plaintiff takes the position that, if his military service or unavailability were taken into account by any individual playing a role in the promotional process, then the requirements of the USERRA have been met. However, we would reiterate that the first prong of the two-part paradigm clearly requires that the plaintiff demonstrate that his military status was a substantial or motivating factor in the employer's decision. See Velázquez-García, 473 F.3d at 17. It does not suffice for an employee to simply show that his military status was mentioned or noted by someone in the promotional process. Id. Consequently, as we have already articulated, we conclude that the trial justice did not err in her application of the USERRA burden-shifting paradigm to the facts of the instant case regarding the 2001 and 2002 interview processes. The plaintiff has additionally contended that the trial justice erred when she failed to conclude that there was a causal nexus between the allegedly tainted promotional process and Director Wall's ultimate decision as to whom to promote. Given the conclusions we have already reached in this opinion, we need not delve into that contention.

## 2. The "Three-Day Rule" Position

The plaintiff further contends that there is error in the trial justice's analysis of the "three-day rule" issue.[24] He contends that the trial justice made a factual error in concluding that availability was a legitimate factor in the filling of this temporary position. He further argues that, because unavailability is never a permissible consideration under the USERRA, the trial justice made a legal error in finding that the DOC could permissibly withdraw the position based on plaintiff's unavailability. Mr. Panarello points out: (1) that he was willing to leave his military position to take the "three-day rule" position; (2) that, despite not giving him the position because he was unavailable, the position was not officially filled until October of 2002; and (3) that Director Wall testified that he would not have an issue with giving a "three-day rule" position to a person on military leave. On appeal, the DOC does not challenge the fact that plaintiff was not awarded the "three-day rule" position because of his military unavailability. However, it contends that a prerequisite for someone to be appointed to such a position was that that individual be available to start immediately.

The trial justice held that the DOC presented credible evidence that the "three-day rule" position required immediate availability; she specifically cited the testimony of Mr. Truman—"when there's a known vacancy for an extended period of time and an agency desires to fill that position while that person is away, it can be done by taking someone of lower rank and placing [him or her] into that position." The trial justice further referenced the fact that plaintiff had not demonstrated that "three-day rule" positions were never given to individuals on military leave. Upon review of the trial testimony and the trial justice's decision, we conclude that there was no error, either factual or legal, in her decision.

---

[24] The rather arcane dispute about the "three-day rule" position is explained in detail in our summary of the testimony of George Truman, Jr. in Part I.A.1, supra.

Contrary to plaintiff's contention, there was adequate evidence for the trial justice to determine that immediate availability was a prerequisite for appointment to a "three-day rule" position. In addition to the above-quoted testimony which the trial justice credited, Mr. Truman also acknowledged that availability was a "prerequisite to a ['three-day rule'] job[.]" He further testified that, when filling a "three-day rule" position, the DOC is "not planning for the future, [but it is] planning for next weekend and forward." It was well within the trial justice's discretion to find Mr. Truman's testimony about the "three-day rule" position the more credible or complete evidence and, thus, find that immediate availability was a "basic requirement" of a "three-day rule" position. See Cahill, 11 A.3d at 86 (holding that this Court will not disturb a trial justice's factual findings after a bench trial unless they are "clearly erroneous or * * * the trial justice misconceived or overlooked material evidence"). Even if the "three-day rule" position was not actually filled until October of 2002, as plaintiff testified, and a "three-day rule" position could be given to someone on military leave, as Director Wall testified, we do not deem that to constitute evidence of discrimination, especially in light of the trial justice's finding that a "three-day rule" position requires immediate availability. Thus, we detect no factual error in the trial justice's decision.

We are similarly not swayed by plaintiff's contention that the trial justice committed an error of law in finding that unavailability was a permissible consideration when filling a temporary position under the USERRA. While an employer may not discriminate based on military unavailability during a general promotional process, common sense dictates that this rule simply should not apply to a temporary position. See State v. Bergevine, 883 A.2d 1158, 1159 (R.I. 2005) (mem.) ("'That seems to us to be the common sense of the matter; and common sense often makes good law.'") (quoting Peak v. United States, 353 U.S. 43, 46 (1957)); see also

- 35 -

<u>State v. Lead Industries Association, Inc.</u>, 951 A.2d 428, 476 n. 51 (R.I. 2008). In the first place, the trial justice found that the DOC required immediate availability for a "three-day rule" position. Accordingly, anyone who was not immediately available would not be awarded the position, regardless of the reason for his or her unavailability; therefore, the same prerequisites were applied to every applicant. Moreover, it would put an impossible burden on employers if they were required to wait weeks or months to fill a temporary position that involves only six months of service. We do not construe the USERRA to require such an exercise in inefficiency, nor do we perceive any error in the trial justice's similar conclusion.

Consequently, we find no error in the trial justice's determination that the DOC did not violate the USERRA by not awarding Mr. Panarello the "three-day rule" position.

### C

### The Trial Justice's Review of the Evidence

Mr. Panarello's final contention is that the trial justice overlooked or misconceived material evidence in reaching her decision, thus necessitating a reversal. Specifically, he refers to: (1) evidence of similarly situated correctional officers (namely, Joseph Forgue, Jr. and John Lavery), who plaintiff contends were also victims of discrimination;[25] (2) a memorandum in evidence written from Tom Partridge, the chairperson of the 2001 interview panel, to Albert Gardner, an assistant director at the DOC, which was ultimately forwarded to Director Wall;[26]

---

[25] Mr. Forgue and Mr. Lavery testified at trial regarding the discrimination that they allegedly suffered based on their military status, while in the employ of the DOC. <u>See</u> Part I.A.3, <u>supra</u>.

[26] The memorandum from Mr. Partridge to Mr. Gardner that is referenced in the text is dated March 2, 2001; it was entered into evidence at the trial. It indicates that the following were the reasons for not recommending a particular corrections officer (not plaintiff) for promotion: "Presently on Workman's [sic] Compensation. * * * The needs of this Department are immediate

(3) the testimony of Ms. Getter regarding her alleged bias against plaintiff because he was on military leave; [27] (4) evidence relating to the promotion of Correctional Officer Shayne Chapman;[28] (5) notes made by Mr. Caruso during the 2002 interview;[29] and (6) the fact that, according to plaintiff, Mr. Whitman's statements at the panel interview in 2002 and at trial were "illegal per se."[30]

As is our consistent practice in reviewing a jury-waived trial, we will not disturb the trial justice's factual findings unless they are "clearly erroneous or * * * the trial justice misconceived or overlooked material evidence * * * ." Cahill, 11 A.3d at 86. With the exception of the statements of Mr. Whitman, the evidence which plaintiff contends was overlooked or misconceived was not specifically alluded to by the trial justice in her decision. However, the fact that she did not expressly reference every last bit of the evidence is certainly not determinative of the issue. The trial justice need only discuss sufficient evidence for it to be clear to this Court that the standard applied was appropriate. In our judgment, the trial justice in

---

* * * ." Before forwarding the memorandum to Director Wall, Mr. Gardner added the following handwritten note (some punctuation and capitalization having been modified by us):

> "I agree with the reasoning about not recommending [a named candidate]. Also we would not have him on line he would be another loss LT. on union business. [A second named candidate] could be a good choice but not while on Comp. we still need LTs that can be used on Line now." (Emphasis in original.)

[27]     See Part I.B.1, supra.

[28]     Mr. Chapman was promoted to lieutenant while on military leave, after the DOC received USERRA training in 2006. His rank after the panel interview in 2006 was similar to Mr. Panarello's rank in 2002: Mr. Chapman was ranked fifth out of eight candidates, and Mr. Panarello had been ranked fifth out of seven candidates. Mr. Chapman was recommended for a second interview and then promoted, despite having given a poor answer on a question regarding DOC policy.

[29]     See Part I.B.4, supra.

[30]     See Part I.B.2, supra.

this case carried out her fact-finding responsibilities in an assiduous and meticulous manner; and, given the applicable standard of review, we perceive absolutely no basis for disturbing her findings. The trial justice clearly reviewed all the evidence, both testimonial and documentary, before rendering her decision. That decision explicitly states:

> "Plaintiff presented twenty-one exhibits and the DOC submitted nineteen exhibits to this [c]ourt. The [c]ourt heard testimony of seventeen witnesses. Subsequent to trial, both parties submitted post-trial memoranda. Based on the testimony and evidence, this [c]ourt makes the following findings."

Reasonableness is the watchword in this domain, and we are entirely satisfied that the trial justice in this case did not in any meaningful way overlook or misconceive evidence such that a new trial should be granted. See Lead Industries Association, Inc., 951 A.2d at 476 n. 51.

Lastly, the testimony of Mr. Whitman was specifically discussed by the trial justice. The plaintiff argues that the statements of Mr. Whitman, regarding plaintiff's unavailability and its impact on his chances for promotion were, in his words, "discriminatory per se" and "per se illegal"—something, which plaintiff submits was overlooked by the trial justice.[31] However, even assuming arguendo that the statements were "discriminatory per se," that would not mean that the statements were "per se illegal" or that plaintiff had thereby met his burden of proof under the USERRA; he was required to show that his military status was not merely a factor, but a substantial or motivating factor in the decision not to promote him. Such regrettable statements by a single panelist (which the trial justice characterized as "ill-advised") do not necessarily mean that plaintiff's military status and unavailability were a substantial or motivating factor in

---

[31] It should be noted that the trial justice found that Mr. Whitman's comments did not prove discrimination by the DOC because they were not "blatantly discriminatory." The plaintiff challenges the applicability of a "blatantly discriminatory" standard. However, even if we assume that the statements were "discriminatory per se," as plaintiff urges, we still conclude that the trial justice did not overlook or misconceive the evidence; Mr. Whitman's statements were properly considered by the trial justice during her analysis and weighing of the evidence.

the ultimate decision about promotion. Thus, we perceive no indication that the trial justice misconceived Mr. Whitman's testimony. Moreover, the trial justice clearly took Mr. Whitman's comments into account when weighing the evidence and determining whether the DOC had discriminated against plaintiff in violation of the USERRA. She specifically referenced Mr. Whitman's comments in both the "Factual Findings and Travel" section and the "Analysis" section of her decision; she noted that Mr. Whitman's comments were "improper and inaccurate in light of the protections of the USERRA * * * ." There is nothing in the record that would incline us to second-guess the trial justice's determination regarding what evidence and testimony were most credible and persuasive. See State v. Guerrero, 996 A.2d 86, 90 (R.I. 2010) (stating that, because this Court is "relegated to reading from a lifeless record, [we] justifiably defer to trial justices who experience firsthand the delivery and demeanor of a witness's testimony") (internal quotation marks omitted); see also State v. Medeiros, 996 A.2d 115, 122 (R.I. 2010); State v. Collazo, 967 A.2d 1106, 1110 (R.I. 2009). Accordingly, we conclude that the trial justice did not overlook or misconceive any material evidence.

Consequently, we affirm the decision of the trial justice denying the plaintiff's claim for a declaratory judgment because the plaintiff failed to show that his military status or resulting unavailability was a substantial or motivating factor in the DOC's repeated decisions not to promote him, whereas the DOC for its part succeeded in proving that it would not have promoted the plaintiff even if he had not been on military leave. We further hold that the trial justice did not overlook or misconceive any material evidence in the case.

**IV**

**Conclusion**

We affirm the judgment of the Superior Court that the DOC did not discriminate against Mr. Panarello due to his military status, in violation of the USERRA. The record may be returned to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Donald Panarello v. State of Rhode Island, Department of
Corrections et al.

**CASE NO:**     No. 2011-105-Appeal.
(PC 03-5569)

**COURT:**     Supreme Court

**DATE OPINION FILED:**  April 7, 2014

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Presiding Justice Alice B. Gibney

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Carly Beauvais Iafrate, Esq.

For State:  Rebecca T. Partington
Department of Attorney General